Scottish Union & National Insurance Company v. Weeks Drug Company.

Decided April 14, 1909.

**1.—Fire Insurance—Contract to Keep Books—Breach.**

A policy of fire insurance contained a stipulation and covenant that the insured would keep a set of books which would present a complete record of the business transacted including cash sales; the books kept by the insured failed to show any entry of the cash sales for about six weeks prior to the burning of the insured property. In an action upon the policy, held, that an inventory of the stock of goods taken two or three days before the fire would not render an account of the cash sales unnecessary and immaterial in arriving at the amount of the loss, and the failure to keep such an account vitiated the contract of insurance.

**2.—Same—Statute Construed.**

The provisions of the Act of 1903 concerning contracts of insurance (Gen. Laws 1903, p. 94; Sayles Supplement art. 3096aa) apply only to the truth or falsity of answers or statements in the application or contract, and not to what was agreed in the contract to be performed; and hence, in an action upon a policy of fire insurance, said provisions constituted no answer to a defense that the plaintiff had breached the contract by failing to comply with the covenants of the contract in the matter of keeping books.

**3.—Same—Increased Hazard—Failure to Give Notice.**

A policy of fire insurance contained the following stipulation "The entire policy......shall be void......if the hazard be increased by any means within the control or knowledge of the insured"; a short time before the property was destroyed by fire an attempt was made to burn the same; the insured knew of this fact but gave the company no notice of it. Held, a failure to notify the company of a continuing danger would probably vitiate the policy, but whether or not a single effort to burn the property would cause the assured to consider it likely to be repeated until successful, would involve a presumption of fact which should be left to the jury.

**4.—Same—Forfeiture—Waiver.**

A policy of fire insurance contained, besides the usual iron safe clause, the following stipulations, in substance, viz.: that the assured as often as required should exhibit to any person designated by the company all books of account, bills, invoices and other vouchers, etc., and should submit to an examination under oath concerning the same, and that the company should not be held to have waived any provision or condition of the policy or any forfeiture thereof by reason of the foregoing requirement. Held, in the absence of any act or word on the part of the company signifying an intention to waive its rights under the foregoing provisions, the fact that the company required the assured to submit to an examination and exhibit his books on three different occasions extending through a period of nearly two months after the fire, was not a waiver of its right to claim a breach of the contract by the assured for causes known to the company at the time of the examinations.

Appeal from the District Court of Nacogdoches' County. Tried below before Hon. James I. Perkins.

*June C. Harris* and *Crane, Gilbert & Crane,* for appellant.—The uncontradicted testimony showing that there had not been a substantial compliance on the part of the plaintiff with that portion of the iron safe clause wherein plaintiff covenanted and agreed that it would keep a record of its cash sales from the date of the inventory

last preceding the issuance of the policy, the Court should have instructed the jury to find for the defendant. Kelley-Goodfellow Shoe Co. v. Ins. Co., 28 S. W., 1032; Aetna Ins. Co. v. Fitze, 78 S. W., 370; Fire Association of Phila. v. Calhoun, 67 S. W., 154; Brown v. Palatine Ins. Co., 89 Texas, 595; Ass. Co. v. Kemendo, 94 Texas, 372; Monger & Henry v. Delaware Ins. Co., 79 S. W., 7.

The evidence conclusively shows that there was a material increase of the hazard by means within the knowledge of the insured which, under the terms of the policy, as a matter of law voided the policy. North American Fire Ins. Co., v. Throop, 22 Mich., 165; 7 Am. R., 638; Walden v. Louisiana Ins. Co., 12 La., 134; 32 Am. D., 116; Allen v. Massasoit Ins. Co., 99 Mass., 161; Dittmer & Pelle v. Germania Ins. Co. (La.), 8 Am. Rep., 601; Betcher v. Capital Fire Ins. Co. (Minn.), 80 N. W., 972; East Texas F. Ins. Co. v. Kempner, 34 S. W., 395-396; Bufe v. Turner, 6 Taunt., 338.

The evidence being conclusive that there had been an incendiary attempt to fire the building containing the stock of goods covered by policy of insurance, a few days prior to the fire, and the evidence further showing that plaintiff, through its president, E. M. Weeks, had knowledge of this fact prior to the fire, and thought that the attempt would be repeated, it was the duty of the court at least to submit to the jury the question of whether or not such an attempt was an increase of the hazard insured against. Northern Assc. Co. of London v. Crawford, 59 S. W., 916; Jones Mfg. Co. v. Manufacturers Ins. Co., 8 Cush., 84.

The evidence conclusively showed that appellant had not waived any of its rights to avoid the policy. Fire Association of Philadelphia v. Masterson, 61 S. W., 962; City Drug Co. v. Insurance Co., 44 S. W., 25; American Century Insurance Co. v. Nunn, 82 S. W. 497; American Century Ins. Co. v. Bass, 90 Tex., 380; Oshkosh Match Works v. Ins. Co., 66 N. W., 525; Georgia Home Ins. Co. v. Moriarty, 37 S. W. 632; Labell v. Georgia Home Ins. Co., 28 S. W., 133.

*S. W. Blount* and *King & Strong,* for appellee.

JAMES, CHIEF JUSTICE.—The action is one upon a fire insurance policy on goods in appellee's drug store. The court directed the jury to find for appellee.

The contract contained the following provisions:

"Iron Safe Clause. The following covenant and warranty is hereby made a part of this policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy or this policy shall be null and void from such date, and upon demand of assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and for credit, from

date of inventory, as provided for in first section of this clause, and also from date of last preceding inventory, if such has been taken, and during the continuance of this policy.

"3. The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night and at all times when the building mentioned in this policy is not actually open for business or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building, and unless such books and inventories are produced and delivered to this company for examination this policy shall be null and void, and no suit or action shall be maintained hereon; it is further agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy, nor a waiver of any defense of the same."

The policy was dated July 22, 1907. Appellee had taken an inventory on May 1, 1907, within twelve months prior to the issuance of the policy. The books kept by appellee failed to show any entry in the books of the cash sales from November 23, 1907, to the date of the fire, which occurred on the night of January 3, 1908. The sales for the month of December were usually from fifty to seventy-five percent. more than any other month in the year. This is the undisputed testimony.

It is contended by appellee that an inventory of the goods on hand, which was taken and completed on January 1, 1908, two or three days before the fire and testified to as complete and true, rendered such cash account unnecessary and immaterial in arriving at the amount of the loss. Also that the provisions of the Act of 1903, (art. 3096aa, Sayles Supplemental Civil Statutes) made the keeping of such items of the cash account not material to the risk, in view of said subsequent inventory.

The first of these positions can not be sustained. The inventory was not, in any sense, a substitute for what was stipulated should be evidenced by the books. The second is also untenable. The peculiar wording of the statute makes it apply only to the truth or falsity of answers or statements in the application or contract, and not what was agreed in the contract to be performed. The case of Continental Fire Ins. Co. v. Whitaker, 79 S. W., 121, did not involve a statute worded as this one.

The contract was clearly violated by the failure to record the cash sales in the books for the period named, and the consequence of this breach is written in the contract itself, as shown in clause 3, which plaintiff must abide by, having agreed to it, unless appellant has waived or is estopped from insisting upon the requirement, which is a matter that will be discussed further on.

At this place we may mention another breach of the policy claimed by appellant, it being in reference to this provision: "The entire policy . . . shall be void . . . if·the hazard be increased by any means within the control or knowledge of the insured." The testimony of Mr. Weeks, the president of the Drug Co., showed that he became informed a few nights' before the fire in question during

such night that an attempt had been made upon the premises, in an upstairs plunder room, to burn the house. This consisted of finding two candles in a box of trash and excelsior, that one of the candles was burning and the other had burned out, and that if he had been five minutes later in discovering this situation the house would have burned up, and he believed somebody was trying thereby to burn the building; and he did not notify the appellant nor its local agent of this. We would not undertake to hold that this was a breach of said provision, as a matter of law. A continuing danger, if known, would have probably have come within the provision. But whether or not a single effort to burn the house would cause one to consider it likely to be repeated until successful, would involve a presumption of fact which should always be left to the jury.

But we are of opinion that the failure to make entry of the said cash items upon the books was, as a matter of law, a breach of the contract which avoided it according to its own plain provisions, unless appellant waived or has estopped itself from setting it up. The evidence was that three days after the fire, the adjuster of appellant and the adjusters of other companies who had issued policies on this stock, came to Nacogdoches and called upon Mr. Weeks, president of appellee, to meet them and bring his books, policies, inventories, etc., for examination. He did so, and testified that he had there his ledger and all the policies and the inventories, but did not have his cash book there. That a few days later Mr. Thompson, adjuster and attorney for appellant, came to Nacogdoches and notified appellee, fixing time and place, to submit to an examination under oath in reference to the loss and to have and produce at such examination all policies carried by appellee, and all books of accounts, inventories, invoices and records, stating in said notice: "You are notified that, in making this demand and in holding said examination, it is not the purpose or intention of either of said companies to thereby admit a liability for said loss, nor to waive any condition or provision of said policies or either of them, or any forfeiture thereof, if any such exists." Mr. Thompson fully examined Mr. Weeks until midnight, with his books, and if the facts now claimed as forfeitures, viz., the absence of said cash entries in the books, and the attempted burning a few days before this fire, were not made known to appellee in the first examination before mentioned, they became known in this examination by Mr. Thompson. Mr. Thompson left, stating he would return later and complete the examination, and he returned on January 24 and subjected Weeks and his books to another or further examination under oath with stenographer, and left without any intimation of what the insurance company would do or claim; and that to protect its rights under the policy "appellee was, by said conduct of the company in failing to say whether it would pay the policy or claim forfeiture of same, compelled to go to considerable expense and labor in employing legal assistance in preparing and making out proof of loss of property under the terms of the policy, which proof consisted of ten pages of typewritten matter; that a copy of this proof was handed to the agent of appellant on February 22, and that on the 27th the appellant notified appellee of its claim of forfeiture and

non-liability by reason of such alleged breaches, there being no pretense that appellee consented not to claim a waiver by reason of such acts." The above in quotation marks is copied from the brief of appellee.

Appellee claims that the acts of appellant in treating the policy as valid were repeated three times with knowledge, after the first time, of the breaches now complained of, and there being no pretense that appellee consented to waive his right to claim the legal consequence of such conduct, and these facts being undisputed, it follows that the forfeiture was waived, and cites the case of German-Am. Ins. Co. v. Evants, 25 Texas Civ. App., 300, as in point.

In that case it does not appear that the contract of insurance contained any such provision as we find in this one, and set forth above in the Iron Safe Clause. Nor the following, which is also in the contract: "The insured as often as required shall exhibit to any person designated by this company . . . and submit to examinations under oath by any person named by this company and subscribe the same, and as often as required shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made." And further: "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for."

Nothing could be plainer than that appellant had the right to conduct the examinations it did without thereby subjecting itself to any claim of waiver or estoppel, as is contended for by appellee. As stated in American Cent. Ins. Co. v. Nunn, 98 Texas, 191, "There was nothing in the facts that transpired at the examinations which were calculated to mislead appellee in any respect." Nothing by word or act was done in the examinations that signified that appellant would waive any right. The case just cited, by the Supreme Court of this State, is in point, and deals with the very provisions involved in this case.

The undisputed evidence showing such breach of the contract by appellee as entitled appellant to claim non-liability, and there having been no waiver or estoppel with reference to such breach, the instructions should have been of a verdict for appellant; and we conclude that the judgment should be reversed and judgment here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.