## HOME INSURANCE COMPANY v. O. C. ROGERS.

Decided April 25, 1910.

**1.—Fire Insurance—Warranty to Keep Books—Fraud—Evidence.**

In a suit upon policies of fire insurance, the defense being that the policies had been avoided by the fraud of insured before and after the fire in shipping out from his store previous to the fire a large portion of the insured stock without making any entry thereof on his books and in concealing such shipments after the fire, evidence reviewed and held to raise an issue of fact as to a fraudulent intent on the part of the insured in the shipment of the goods which the court properly submitted to the jury, and which was sufficient to support a finding in favor of the insured on said issue.

**2.—Same—Fraud after Fire—Evidence.**

In a suit upon policies of fire insurance, evidence tending to show fraud on the part of the insured in failing to make entries in his books of goods shipped out to fictitious persons after taking the last inventory, considered and held to raise an issue of fraudulent attempt on the part of the insured to deceive the agents of the insurance company, and the refusal of the court to submit said issue was reversible error.

**3.—Same—Iron Safe Clause—Keeping Books.**

The provision in a policy of fire insurance requiring the insured to keep a set of books which shall clearly and plainly present a complete record of business transacted, is just and reasonable and will be enforced by the courts. Any other method of keeping a record of the business will not be a compliance with the insurance contract.

**4.—Same—Act Construed.**

The wording of the Act of 1903 (art. 3096aa, Sayles' Civ. Stats.) makes it apply only to the truth or falsity of answers or statements in the application or contract of insurance concerning past or present facts, and not to what is agreed in the contract to be performed in the future. Hence it has no application to an agreement by the insured to keep a complete set of books, etc., and whether or not a failure to keep such a set of books was material in ascertaining the extent of a loss by fire, would be beside the true issue.

Error from the District Court of Shelby County. Tried below before Hon. James I. Perkins.

*Wm. Thompson* and *Geo. S. Wright,* for plaintiff in error.—Where the assured under a fire insurance policy ships a large portion of his goods from his stock just prior to his departure from home for another county, and three days before the fire, to a fictitious consignee and under an assumed name; and where he purposely fails to make a

record of such shipments on his books, and after the fire presents such books and makes claim on the goods so removed, he is guilty of fraud within the meaning of the policy, and such policy is thereby forfeited. Lion Fire Ins. Co. v. Starr, 71 Texas, 733; Phoenix Ins. Co. v. Shearman, 17 Texas Civ. App., 456; Phoenix Ins. Co. v. Swann, 41 S. W., 519; Beville v. Merchants Ins. Co., 46 S. W., 914.

Where an assured presents his books, which he knows do not show shipments from his stock, to the insurance company for the purpose and intention of collecting money on that part of the stock so shipped, he is guilty of fraud after the fire, and where the evidence raises that issue it is error to refuse a requested charge which correctly embodies the law on that issue.

The provision of a fire insurance policy requiring the assured to keep a complete set of books showing all shipments and sales, both for cash and for credit, etc., is a valid, reasonable and binding provision, and a failure of the assured to comply therewith renders the policy void. Beville v. Merchants Ins. Co., 46 S. W., 914; Fire Ass'n of Philadelphia v. Calhoun, 28 Texas Civ. App., 409; American Cent. Ins. Co. v. Nunn, 98 Texas, 191; Western Assur. Co. v. Kemendo, 94 Texas, 371; Scottish Union Ins. Co. v. Weeks Drug Co., 55 Texas Civ. App., 263; Kelley-Goodfellow Shoe Co. v. Liberty Ins. Co., 8 Texas Civ. App., 227; Orient Ins. Co. v. Darrol-Kelly Mer. Co., 126 S. W., 616.

Article 3096aa, Rev. Stats., does not apply to the provision of a fire insurance contract known as the iron-safe clause, and it was not necessary for the company to show that the breach was material to the risk and contributed to the loss, before it could avail itself of that breach as a defense to the policy. Scottish Union Ins. Co. v. Weeks Drug Co., 55 Texas Civ. App., 263; Germania Ins. Co. v. McChristy, 101 S. W., 822; Wright v. Hartford Ins. Co., 54 Texas Civ. App., 6.

Rules on Construction: Albrecht v. State, 8 Texas Crim. App., 222; Roberts v. Yarboro, 41 Texas, 451; Burgess v. Hargrove, 64 Texas, 115; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 604

*Davis & Davis,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is a suit by O. C. Rogers against the Home Insurance Company to recover the amount due upon two fire insurance policies for $500 and $1,000 respectively, issued by defendant company upon the stock of goods of plaintiff which had been destroyed by fire during the life of the policies. Defendant pleaded general denial, and general and special demurrers which need not be further referred to, and specially pleaded a violation of the usual iron-safe provisions of the policy, and also that the policy had been avoided by the fraud of the insured before and after the fire touching a matter relating to the insurance and the subject thereof, such fraud, as alleged, consisting in having fraudulently shipped out from his store previous to the fire a large portion of the insured stock without making any entry on his books to show such shipment, and in concealing such shipments after the fire for the fraudulent purpose of obtaining payment for the goods so shipped under the policies.

The case was tried with the assistance of a jury, resulting in a verdict and judgment for plaintiff, from which, its motion for a new trial having been refused, defendant appeals.

The issuance of the policies and the destruction of the insured property by fire were established and are not disputed by appellant. The fire occurred on the night of January 3, 1908. Each of the policies contained the following provisions and stipulations: "This entire policy shall be void . . . in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after the fire."

*"Iron-safe Clause—Warranty to Keep Books and Inventories and to Produce them in case of Loss.*

"The following covenant and warranty is hereby made a part of this policy:

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2d. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of this policy.

"3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The undisputed evidence, being for the most part the testimony of appellee, discloses the following facts:

An inventory of the goods was taken January 12, 1907, and another November 25, 1907, both of which were preserved and were presented by appellee to Long, agent of appellant, a few days after the fire, as a basis for adjustment of the loss. On December 27, 1907, appellee shipped out of the stock a lot of patent medicine, amounting to $88.48. The goods were shipped in the name of Stevens & Co., consigned to Stevens & Co., at Shreveport, both being fictitious persons. Appellee's instructions were to the parties who hauled the goods to the railroad station that the goods be shipped in the name of C. L. Doggett & Co., also fictitious persons. On the same day he shipped a lot of drygoods, amounting to $155.89, consigned by R. M. Sealy to

R. M. Sealy at Shreveport, a fictitious person. On December 30th appellee made another shipment, of shoes, amounting to $130.55, consigned by R. M. Sealy to R. M. Sealy, Shreveport. Several other shipments were made out of the stock after the last inventory had been taken, $27.50 to one party, $10.00 to another, and on December 30, 1907, a lot of jewelry amounting to $165.85. These latter shipments appear to have been of goods returned. The total amount of these several shipments was $578.71, as given by appellee. No entry was made of any of these shipments on the books of appellee. When appellee packed the goods he made a list of them but did not state prices. Inventories were made after the fire giving the prices. Appellee kept a set of books showing goods bought and sold, but did not enter in any of the books the several lots of goods shipped out, referred to above.

Appellee undertook to explain the shipment of the several lots of goods to Shreveport, that he owed a good deal of money; one party had sued him, and several were either threatening suit or pressing him for settlement, and he was apprehensive that he would be forced into bankruptcy; that his father-in-law was surety for him on one note and his brother-in-law upon another, and he took out the goods and shipped them as he did in order to be able to protect these claims if bankruptcy should overtake him. Without going further into the evidence on this point, we think it was sufficient to present the issue as to whether there had been such fraud on the part of appellee before the fire relating to the contract of insurance and the subject thereof in the matter of the shipments of the goods, as to avoid the policy, and that the court would not have been justified in instructing a verdict for appellant on this issue. So, in deference to the verdict, we find that the evidence on this issue is sufficient to sustain the verdict. The first assignment of error complaining of the refusal of a peremptory instruction to return a verdict for defendant on this issue is overruled.

The trial court instructed the jury as to the issue of fraud committed by appellee before the fire in the matter of the shipment of the goods, but in his charge did not submit the issue of fraud on the part of appellee in his dealings with the agent and adjusters of appellant in regard to the loss. The court also refused a special charge requested by appellant submitting this issue. This was error. Evidence was introduced which tended to show that after the fire appellee presented to the agent of appellant the inventories taken by him and the books kept by him, which contained no mention of the goods shipped, and while appellee testified that he stated to Long, the agent, that "shipments had been made," he gave him no further or definite information as to this important matter at the time. Afterwards, to another agent, he disclosed the character of these shipments, but this was only after he had discovered that the agent had information as to these shipments. Taking the entire testimony, the jury should have been allowed to say whether or not appellee had attempted to deceive the agents of appellant, and to collect as part of his loss the value of these goods which had been shipped. The second

and third assignments of error raising this question must be sustained.

Appellant requested the court to charge the jury to return a verdict for defendant on the ground that the undisputed evidence showed that the policy had been avoided by a failure to comply with the iron-safe clause provision of the policy, which was refused, and this action of the court is the basis of the fourth assignment of error. This provision of the policy required appellee "to keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory provided for in the first section of this clause and during the continuance of this _policy," and provided that, in the event of failure to produce such a set of books, the policy should become null and void, and such failure should constitute a perpetual bar to recovery on the policy. As we have stated, all the evidence on this point came from the insured himself, and is not disputed. It is entirely clear therefrom, that none of the shipments of goods out of the stock in December, 1907, after the taking of the last inventory, amounting to $578, had been entered in the books kept by appellee. These books were duly kept by appellee, ostensibly for that purpose. They were the books required to be kept by the terms of the iron-safe clause. It is true that appellee claimed and testified that he kept a list of these goods when he boxed them up, but this is not what the terms of the policy required him to do, and with good reason. It may be that such lists, if they contained the value of the goods, and were well sworn to, would be just as good as the entry in the books, but that was not the contract. The insurance company was entirely justified in requiring some more reliable and tangible evidence as to sales and shipments than would be afforded by items entered upon fugitive slips of paper or small memorandum books kept in the pocket. The validity of these provisions in a policy of fire insurance and the consequences of a failure to comply with them have often been declared by our courts.

The trial court took the same view of the evidence that we have done, and instructed the jury, upon this issue, that they should return a verdict for defendant unless they were satisfied from a preponderance of the evidence that the failure to make such entries in the books of the shipments and sales referred to was not material in ascertaining the amount and extent of the loss; but if they found that such failure was not material to the ascertainment of the true amount of the loss, to find for plaintiff, unless the verdict should be for defendant on other issues. The trial court reached this conclusion by applying to the terms of the policy referred to provisions of the Act of March 27, 1903 (chap. 69, Acts 28th Leg., Reg. Sess.), being article 3096aa, Sayles' Sup. Rev. Stats., which are as follows:

"That any provision in any contract of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the policy void, shall be of no effect, etc., unless it be shown that the matter or thing misrepresented was material to the risk or actually contributed to the contin-

gency or event on which said policy became due and payable; and whether it was material, and so contributed in any case, shall be a question of fact to be determined by the court or the jury trying such case."

The application of this Act to the obligations imposed by the policy upon the insured to do or to refrain from doing certain things called "promissory warranties," was discussed and decided by this court in the case of Gross v. Colonial Ass. Co., 56 Texas Civ. App., 627 (121 S. W., 517). The policy was contested in that case on the ground that there had been a violation of the obligation as to concurrent insurance. This court held that the provisions of the statute referred to were not intended to apply to such obligations, which were not misrepresentations or false statements, but promissory warranties.

In the case of Scottish Union & Nat'l Insurance Co. v. Weeks Drug Co., 55 Texas Civ. App., 263 (118 S. W., 1086), the question of the application of this statute to the provisions of a fire policy identical with those of the present policies, with regard to keeping proper books, was before the court . In that case, as in this, it was undertaken to substitute other evidence, much more satisfactory than in the present case, to show the cash sales omitted from the books. The Court of Civil Appeals of the Fourth District held that the statute did not apply, distinguishing the case of Continental Ins. Co. v. Whitaker, Supreme Court of Tennessee (79 S. W., 119), relied upon by appellee. The judgment of the trial court was reversed and judgment rendered for appellant. We quote from the opinion in the Weeks Drug Company case:

"It is contended by appellee that an inventory of the goods on hand, which was taken and completed on January 1, 1908, two or three days before the fire, and testified to as complete and true, rendered such cash account unnecessary and immaterial in arriving at the amount of the loss; also that the provisions of the Act of 1903 (article 3096aa, Sayles Ann. Civ. St. Supp., 1897-1904) made the keeping of such items of the cash account not material to the risk in view of the said subsequent inventory.

"The first of these positions can not be sustained. The inventory was not in any sense a substitute for what was stipulated should be evidenced by the books. The second is also untenable. The peculiar wording of the statutes makes it apply only to the truth or falsity of answers or statements in the application or contract, and not what was agreed in the contract to be performed. The case of Insurance Co. v. Whitaker, 112 Tenn., 151; 79 S. W., 121; 64 L. R. A., 451; 105 Am. St. Rep., 916, did not involve a statute worded as this one. The contract was clearly violated by the failure to record the cash sales in the books for the period named, and the consequence of this breach is written in the contract itself, as shown in clause 3, which plaintiff must abide by, having agreed to it, unless appellant has waived or is estopped from insisting upon the requirement, which is a matter that will be discussed further on."

Writ of error was refused by the Supreme Court, which we are bound to regard as an approval by that court of the doctrine announced in that case and in the case of Gross v. Insurance Co., *supra,*

decided by this court.    (Orient Ins. Co. v. Darrel-Kelly Mer. Co., 126 S. W., 616; Beville v. Merchants Ins. Co., 46 S. W., 914.)

It is proper to add that the present case was tried before either of the above cases was decided.

Upon this issue the trial court should have directed the jury to return a verdict for the defendant.

It is not necessary to discuss or decide other assignments of error. It follows from what we have said that the fifth and sixth assignments of error are well taken.

The evidence appears to have been fully developed.    The case of appellant upon the contested issue referred to rested upon the testimony of appellee himself.    The trial court should have instructed the jury, as requested, to return a verdict for defendant.

The judgment is reversed and judgment here rendered for appellant.

*Reversed and rendered.*