## DOROUGH v. NORTHWESTERN FIRE & MARINE INS. CO. (No. 3311.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 6, 1927. Rehearing Denied Jan. 20, 1927. Writ of Error Dismissed for Want of Jurisdiction March 16, 1927.)

1. Insurance ⬦═335(2)—Failure to take inventory under record warranty clause within 30 days held sufficient to forfeit policy if record of sales was insufficient.

Where record warranty clause in fire insurance policy required that, if inventory had not been taken within 12 months prior to date of issuance, insured should take inventory within 30 days, failure of insured, where no inventory had been taken within prior 12 months, to take inventory within 30 days after issuance was sufficient to forfeit policy if sales records kept by insured were insufficient.

2. Insurance ⬦═335(2)—Compliance with requirement of itemized inventory of stock is usually sufficient if purchases and sales are preserved as history of material business transactions.

To comply with policy requirement that insured take inventory of stock of goods once each year, and unless complete set of books is on hand showing record of business transacted since inventory, policy shall be void, it is usually sufficient if purchases and sales are recorded in orderly manner and preserved as chronological history of material business transactions.

3. Insurance ⬦═665(3)—Evidence held conclusively to show that no sufficient records of sales were made by insured within record warranty clause.

In action on fire insurance policy to recover for loss of stock of goods, evidence *held* conclusively to show that insured kept no sufficient records of sales under record warranty clause of policy requiring that, unless inventory be taken within a year or 30 days after issuance of policy, set of books shall be kept showing complete record of business transacted.

4. Insurance ⬦═646(2)—Insured relying on substitute for customary method of keeping books should present it so that its sufficiency may be determined.

When insured in action on fire insurance policy relies on a substitute for the customary method of keeping books as required by record warranty clause of policy, he should present or describe such substitute, so as to enable its sufficiency to be determined.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by R. P. Dorough, trustee, against the Northwestern Fire & Marine Insurance Company, Consolidated, and others. From a judgment for plaintiff against the defendant named in amount less than petitioned for, he appeals. Affirmed.

Bulloch & Ramey, of Tyler, for appellant. Gill, Jones & Tyler, of Houston, and Fairchild & Reditt, of Lufkin, for appellee.

HODGES, J. On December 23, 1924, a stock of goods owned by E. U. McMullen, together with the store furniture and fixtures, was destroyed by fire. Prior to the fire McMullen had procured the following policies of insurance: Policy for $2,500 on merchandise and $800 on store fixtures, issued February 28, 1924, by Providence-Washington Insurance Company; policy for $1,000 on merchandise, issued by Northwestern Fire & Marine Insurance Company on April 1, 1924; another policy for the same amount on merchandise, issued on same date by the Great American Insurance Company; another for the same amount on merchandise was issued on August 17, 1924, by the Hanover Fire Insurance Company. McMullen was conducting what is called a "variety store" in Lufkin, Tex. In

February following the fire McMullen was adjudged a bankrupt, and appellant Dorough was appointed trustee in bankruptcy. Upon the refusal of the insurance companies to pay the amount of the loss demanded a suit was filed against each of them. Later those suits were consolidated and tried as one. As a defense the insurance companies pleaded specially the violation of the insurance contract in keeping fireworks and explosives on the premises, and the failure of the insured to comply with the record warranty clause contained in each of the policies.

On the trial only those issues were submitted to the jury which related to the loss on the store furniture and fixtures. The court held as a matter of law that the record warranty clause had not been complied with by the insured. Special issues bearing upon that question were presented by the trustee and refused by the court. Upon the answers made by the jury to the issues submitted the court rendered a judgment for the amount of the insurance on the furniture and fixtures, but denied any recovery for the loss on the stock of goods. The trustee has appealed, and assigns as error the rulings of the court in refusing to submit the special issues requested and in denying a recovery for the loss on the stock of goods.

Since this case was submitted in this court a motion has been filed by the trustee asking that the appeal be dismissed as to the Providence-Washington Insurance Company, whose policy was issued on February 28, 1924, and that company has been eliminated from the case.

The material provisions of the record warranty clause are as follows:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once each calendar year and within twelve months of the last preceding inventory, if such has been taken. Unless such inventory has been taken within twelve calendar months prior to the date of this policy, and, together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy; or, in each and either case, this entire policy shall be null and void.

"Section 2. The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.

"The term 'complete record of business transacted,' as used above to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

"Section 3. The assured will keep and preserve all inventories of stock taken during the calendar year and also all those taken during the preceding calendar year which are on hand when this policy is issued, and will keep and preserve all books which are then on hand showing a record of business transacted during the current calendar year and the preceding calendar year."

The insured and his son, Doyle McMullen, both testified for the appellant on the trial. In substance their testimony was that during the months of January, February, and March, 1924, no bookkeeper was employed, and no regular set of books was kept. Doyle McMullen began keeping the books about April 1, and continued till the fire occurred. The only record of additions to the stock of goods during the months of January, February, and March consisted of loose original invoices showing purchases made at different times from different dealers. The record of sales consisted of cash register slips, on which were registered the receipts from the daily sales of different articles made in the course of business. These slips were not produced and submitted by the insured to the adjuster after the fire, and were not satisfactorily accounted for at the date of the trial. Doyle McMullen testified that he thought they were deposited in a metal box, but was not certain. His father testified that he supposed they had been thrown away. As another record of sales a book was produced at the trial which contained only two entries during the months of January, February, and March. One was, "Cash sales from January 1 to March 18, $1,473.58;" the other, "Cash sales from March 18 to April 1, $433.81." These were in the handwriting of Doyle McMullen, who, according to the testimony, began keeping the books about the last days of March or the first of April. From April 1 to the time of the fire there appears to have been kept a fairly good record of the purchases and sales. The testimony showed that McMullen sold for cash, and that his profit was about 33 per cent.

The policies now involved in this appeal were issued on and after April 1, 1924. Appellant contends that the failure to keep a complete record of sales prior to the date of those policies does not, under the terms of the warranty clause, cause a forfeiture.

[1] In the first section of the record warranty clause the insured contracted that, in the event an inventory had been taken within 12 months prior to the date of the policy, that inventory, together with a set of books showing a complete record of business transacted since the taking of the inventory, should be on hand at the date of the policy. If such a record was not on hand at that date, then the insured should take another inventory within 30 days after the date of the policy. If those conditions were not complied with the policy should be null and void. An inventory taken several months prior to the issuance of an insurance policy would be of little, if any, service in ascertaining a loss several

months later, unless a record had been kept of what was added to and taken from the stock during the interval between the taking of the last preceding inventory and the date of the policy. That such a record of sales is important is apparent at a glance. The parties had contracted that if no such record was on hand at the date of the policy then another inventory should be taken within 30 days thereafter. In this instance no such second inventory had been taken Under its terms that failure was sufficient to forfeit the policy, if the record of sales relied on was insufficient. Scottish Union v. Weeks, 55 Tex. Civ. App. 263, 118 S. W. 1086; M. & M. Co. v. Southern Trading Co. (Tex. Com. App.) 229 S. W. 312.

[2] The "set of books" called for in such provisions of insurance policies does not necessarily mean a record of business entered in one or more bound volumes. It is usually sufficient if the purchases and sales are recorded in an orderly manner upon something which is consecutively arranged and preserved as a chronological history of the material business transactions. Home Ins. Co. v. Flewellen (Tex. Com. App.) 247 S. W. 833, and cases referred to; Home Ins. Co. v. Rogers, 60 Tex. Civ. App. 456, 128 S. W. 625. There must be a substantial conformity to what is commonly considered a system of business bookkeeping, because that is manifestly what the parties to insurance contracts have in mind when making such stipulations. It may be that slips of paper on which are written entries of purchases or sales made in the course of business are sufficient when orderly arranged for preservation in some convenient form for examination, as in the Flewellen Case cited above. But that cannot be said of a mass of loose slips, undated and not arranged and preserved in any chronological order.

[3, 4] The only contemporaneous record of sales made during the first three months of 1924 were the cash register slips. How these were kept is only vaguely shown. Whether they were chronologically arranged, or even dated, is not stated by any of the witnesses. The slips were not exhibited to the adjusters as a part of the bookkeeping system, nor were they introduced in evidence at the trial. When the insured relies upon something of that character as a substitute for the customary method of keeping books, he should either present the substitute or so describe it as to enable the court or the jury to intelligently determine its sufficiency. A careful examination of this record shows how unreliable such a system may be. As near as we can ascertain from the books offered in evidence, the total sales for the year 1924 amounted to $13,328, an average of approximately $1,100 per month. According to the only two entries made for the first three months, based upon a mass collection of the cash register slips then on hand, the aggregate sales were $1,907.39, an average of only $635 per month. The average monthly sales for April, May, and June following amounted to $1,217. The average monthly sales for the 9 months beginning April 1, during which a daily record appears to have been kept, amounted to $1,269. Why the monthly sales for the three months during which no system of books was kept were only half what they were during the other months of that year is not explained. We cannot say, in the absence of evidence, that this discrepancy was due alone to dull business. It is just as probable that it was due to the loss of some of the cash register slips.

However, assured, in the settlement of his loss, and the trustee in this appeal, rely mainly upon the two book entries—one appearing to have been made on March 18, and the other on April 1. These, we think, are also insufficient. They show that in one instance during a period of 77 days no book entries were made of the cash sales. The requirement to keep a record carries the implication that the entries shall be made approximately contemporaneous with the occurrence of the transaction recorded. That is the usual custom in an orderly conducted business, and such must have been in contemplation of the parties when the insurance contracts were made. Hartford v. Farris, 116 Va. 880, 83 S. E. 379; Boulanger v. British Underwriters, 141 La. 461, 75 So. 207; Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436; 26 Corp. Jur. 255.

We therefore conclude that the trial court was correct in holding that the evidence conclusively showed that no sufficient record of sales had been made by the insured, and the judgment is affirmed.