AMERICAN NATIONAL BANK OF AUSTIN ET AL. V. FIRST NATIONAL BANK OF SAN MARCOS.

Decided January 19, 1906.

**1.—Removal of Mortgaged Property—Trespass—Plea of Privilege.**

Cattle mortgaged to plaintiff were shipped by the mortgagor out of the county where they were held and to market in another State, consigned to and sold on account of the president of defendant bank, in pursuance of an arrangement made with such mortgagor, in that county, by the president acting on behalf of the bank. Held, that the trespass was committed in the county, and suit therein could be maintained against the bank and its president over their plea of privilege to be sued in the county of their residence.

**2.—Identifying Mortgaged Property.**

Evidence considered and held sufficient to identify cattle mortgaged to plaintiff with those shipped out to and sold on account of defendant.

**3.—Evidence—Communication by Telephone.**

A conversation held by an unknown person purporting to speak for a bank, by long distance telephone, held admissible against the bank, where circumstances rendered such communication by its agents probable and no other party appeared to have an interest in holding such communication.

**4.—Evidence—Opinion as to Number.**

On the question of the number·of cattle in certain brands contained in a shipment, witnesses who saw the cattle in the shipping pens and testified to their inability to tell the number of them in such brands were properly permitted to give their opinion that about half of those shipped were so branded.

**5.—Mortgage—Default—Conversion.**

A mortgagee entitled to possession of property, after maturity of his debt, can maintain suit for conversion against one removing and selling it, and is not bound to pursue the property.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

The witness, Mitchell, testified that he was a cattle man and had been in the business himself. That he could not state the number of cattle in the 299 head shipped from Kyle on September 6, 1902, in the JP— brand and in the T5 brand. He was asked by counsel for plaintiff to give his best judgment as to the number of cattle in the bunch in each of said brands, to which question and any answer thereto appellants' counsel objected, because the question called for the opinion and conclusion of the witness, and not for facts. The court overruled the objection and permitted the witness to answer the question, when he said: "I think about half of them, maybe, were branded T5. There were more of them than in any other brand. . . . I think there were more of the JP— and T5 than any other cattle. Of course, I did not count them, and do not know the exact number."

The testimony of witness Jackman was similar, and was admitted over a like objection.

*James H. Robertson,* for appellants, cited on pleading of privilege: Hilliard v. Wilson, 76 Texas, 180; Wettermark v. Campbell, 93 Texas, 523, and cases cited therein; Tignor v. Toney, 13 Texas Civ. App., 520; Stark v. Whitman, 58 Texas, 375; Raleigh v. Cook, 60 Texas, 442; Cavin v. Hill, 83 Texas, 73, 80 Texas, 141, 20 Texas Civ. App., 127.

On identification of the mortgaged cattle with those shipped: Oxsheer v. Watt, 91 Texas, 124; Avery v. Popper, 92 Texas, 337; Cleveland v. Williams, 29 Texas, 212; Moss v. Sanger, 12 S. W. Rep., 616.

That no trespass was committed by defendants in Hays County: Hilliard v. Wilson, 76 Texas, 183; Ricker v. Shoemaker, 81 Texas, 22; Austin v. Cameron, 83 Texas, 351; Wettermark v. Campbell, 93 Texas, 523.

That the number and value of the mortgaged cattle converted must be shown: Galveston, H. & S. A. Ry. Co. v. Wesch, 85 Texas, 598; Donald v. Carpenter, 8 Texas Civ. App., 326; Gulf, etc., Ry. Co. v. Hughes, 31 S. W. Rep., 411; Galveston, etc., Ry. Co. v. Duelm, 23 S. W. Rep., 602.

That plaintiff must proceed against the persons to whom the cattle were sold, not those receiving the proceeds in payment of their debt: Estes v. McKinney, 43 S. W. Rep., 556; Burnett v. Gustaveson, 54 Iowa, 86, 37 Am. Rep., 190; 2 Cobbey on Chattel Mortgages, sec. 636; Waters v. Cass County Bank, 65 Iowa, 234; Jones on Chattel Mortgages, sec. 464.

*Will G. Barber* and *O. T. Brown,* for appellee.—Plaintiff, at the maturity of the note, became, and, from thenceforward, continued to be, entitled to immediate possession of all the cattle covered by the mortgage. Singer Mfg. Co. v. Rios, 96 Texas, 174; Jones, Chattel Mortgages, sec. 434.

Removing the cattle from the feed pens, with intent to remove them out of and from Hays County, was in and of itself unlawful, and every step thereafter taken in such removal was alike unlawful. See foregoing statement. Art. 3333, Rev. Civ. Stats. of Texas, which statute expressly prohibits such removal.

Plaintiff, at and before the time of such removal, being entitled,

under its July mortgage, to immediate and exclusive possession of the property covered by that mortgage, until payment of the first note, the removal of the property from the feed pens, and the act of loading it into the cars at Kyle, with intent to remove it from Hays County, was the commission, within Hays County, of a trespass, within the meaning of the term "trespass," as that term is employed in subdivision 9 of article 1194, Revised Civil Statutes of Texas.     Wettermark v. Campbell, 93 Texas, 523; Ricker v. Shoemaker, 81 Texas, 22; Hilliard & Hilliard v. Wilson, 65 Texas, 286; Hill v. Kimball, 76 Texas, 210; Cook v. Horstman, 2 W. & W. Civ. Cases, sec. 770; Cohn Bros. & Co. v. Bonnett, 62 Texas, 674.

Appellee shows that sufficient of the cattle covered by its mortgages were included in those shipped by appellants from Kyle to support the judgment.     Panhandle Bank v. Emery, 78 Texas, 498; Grounds v. Ingram, 75 Texas, 509; Boykin v. Rosenfield, 69 Texas, 115.

Under the conditions, it was competent for the witnesses Mitchell and Jackman to express their opinion or judgment.     Cabaness v. Holland, 19 Texas Civ. App., 391; Albright v. Corley, 40 Texas, 113, 116; Sabine & E. T. Ry. Co. v. Broussard, 69 Texas, 617; Hodson v. Goodale, 29 Pac. Rep., 70.

It is not necessary, to the admissibility in evidence of telephone conversations, for the witness to recognize the voice of the other party so as to be able to swear positively that he is the person he purports to be. Missouri Pac. Ry. Co. v. Heidenheimer, 82 Texas, 195; Wolfe v. Missouri Pac. Ry., 97 Mo., 473; Globe Printing Co. v. Stahl, 23 Mo. App., 451; Guest v. Hannibal & S. J. Ry. Co., 77 Mo. App., 258; Reed v. Burlington, C. R. & N. Ry., 72 Iowa, 166.

Plaintiffs were not, as matter of law, bound in this character of suit, and under the facts and circumstances in evidence, to prove, in order to recover damages, that defendants took away any specific or definite number of the cattle covered by their mortgages.     Sabine & E. T. Ry. v. Broussard, 69 Texas, 617; Texas & Pac. Ry. Co. v. Hays, 2 App. Cases (Willson), sec. 392; Missouri Pac. Ry. Co. v. Harmonson, 4 App. Cases (Willson), 134; Southern Pac. Ry. Co. v. Duncan, 3 App. Cases (Willson), sec. 234; Gulf, C. & S. F. Ry. Co. v. Hedrick, 7 S. W. Rep., 353.

FISHER, CHIEF JUSTICE.—This is a suit by the First National Bank of San Marcos against the appellants to recover damages for the conversion of 200 head of cattle valued at about $6,000, which the appellee claimed under a chattel mortgage lien to secure the payment of two promissory notes, one for $5,333.40, and the other for $2,220, executed by one J. C. Poulton.     The mortgage given to secure the first-named sum was executed July 15, 1901, covering 100 three-year-old steer cattle, branded P on the left side, and 125 two-year-old steer cattle branded T5 on the left side; all these cattle situated and located in Hays County.     The note which the mortgage secured was due six months from July 15, 1901.     The chattel mortgage which secured the last-named sum was dated August 29, 1901, and covered 185 steer yearlings, all branded P on the left side, located in Hays County.     On July 15, 1901, the first mortgage was duly deposited for registration in the office

of the county clerk of Hays County, and was duly recorded on that day. The last mortgage was recorded on the 30th day of August, 1901. All of these instruments were executed by Poulton, the owner of the cattle, all of the cattle at the time being located in pastures described in the mortgages situated in Hays County.

It is further averred by appellee that the appellants did, in the county of Hays, some time in the month of September, 1902, without the consent of appellee, take, convert and appropriate to their own use, and did remove and carry away from Hays County, a large number of these cattle, to wit: 150 head covered by and subject to the first mortgage, and 50 head covered by and subject to the second mortgage.

The appellants, by a proper plea in abatement, alleged their privilege to be sued in the county of Travis, their place of residence. The answer filed by them denied the conversion, and alleged that the American National Bank had a valid and subsisting mortgage on the cattle to secure a debt due and owing to the bank by Poulton. That mortgage was executed subsequent to the appellee's mortgage and registration of the same, of July 15, 1901, but prior to appellee's mortgage of August 29, 1901. The notes of Poulton to both parties to the suit were due and unpaid at the time of the alleged conversion.

The plea of privilege was properly submitted to the jury, and the verdict in response to the submission of that question was a finding against the appellants. It is shown by the facts that neither of the appellants resided in Hays County, nor did the bank have an agent there upon whom service could be had, so as to subject it to the jurisdiction of that court; but it is contended, and properly so, that the evidence was sufficient to give the District Court of Hays County jurisdiction and fix the venue of the suit in that county, by reason of the active participancy of the appellant, Littlefield, acting for his codefendant in converting and taking possession of and removing the cattle covered by appellee's mortgage from Hays County. Littlefield was at that time the president of the American National Bank, and there is no question raised as to his authority to represent the bank in the transaction that is charged to have occurred.

The mortgage to the bank provided that the cattle should be shipped to market in the name of Littlefield. Littlefield was named as trustee in the mortgage; and, in the pursuit of his duties and authority, by virtue of that instrument, and as the representative of the bank, a few days before the cattle were actually shipped to East St. Louis, he went to Kyle, in Hays County, where the cattle were under the control of Poulton, and located in a pen, for the purpose of inspecting the cattle and ascertaining their condition, with a view of their delivery to him or for him on board of the cars at Kyle, Texas, to be shipped to St. Louis. Littlefield examined and inspected the cattle, and the jury had the right to conclude, from the evidence, that he became aware at that time of the number of cattle, which seems to have been about 300 head, in the pen, and of the brands that identified the cattle, and their age and sex. A part of the cattle then in the pen were identified upon the trial of this case as the cattle subject to the mortgages of appellee. It was then and there, in effect, agreed between Littlefield and Poulton that the cattle should be shipped to East St. Louis in the name of

Littlefield, or consigned to Littlefield; he at the time, it appears, was acting for the bank, and it was then and there the intention of both parties that the cattle should be so shipped. The evidence is sufficient to justify the conclusion that he knew that that promise and agreement would be complied with. And, in fact, a few days afterwards, the cattle were actually delivered to the railway company at Kyle, and shipped under that agreement to St. Louis in the name of Littlefield. Littlefield was not present on the day that the cattle were shipped, but, before they were shipped, it appears that he informed the American National Bank as to what he had done, and left directions with its cashier, who appears to be General Hamby, with reference to shipping the cattle. On the day of the shipment the American National Bank telephoned to the railway company at Kyle, substantially inquiring as to whether Poulton had delivered the cattle, and whether they were to be shipped out in the name of Littlefield, and they received a reply to the effect that such was the case.

The law makes it an offense to remove mortgaged property without consent from the county where it is situated, and there is a provision of the statute that confers jurisdiction and venue in the county where such an offense is committed. There is also another provision that fixes venue in the county where a trespass is committed. While it is true that Littlefield was not present when the cattle were put upon board the cars and shipped out of the county, his conduct in advising, aiding and encouraging Poulton to ship the cattle makes him in law an active participant, and his conduct in that respect is sufficient to bring him within the terms of the statute, and is, therefore, binding upon his principal, the American National Bank.

On the main issues in the case, we find that the averments of the plaintiff are substantially established by the evidence. The cattle in question were shipped from Hays County by Poulton for the benefit of the appellants, and were sold in St. Louis, and the proceeds applied to the debt owing the American National Bank. It was a controverted issue in the case as to whether the cattle in question were identified as the cattle covered by appellee's mortgage of July 15, 1901; but, in our opinion, there is evidence that identifies a sufficient number of these cattle covered by the appellee's mortgage to justify the amount of the verdict according to the evidence of value of these cattle testified to by the witnesses.

An objection was urged below, which is preserved here, to the evidence of witness Johnson, detailing, in substance, a telephone communication between him and the American National Bank. Johnson was the station agent at Kyle that received the cattle, and was communicated with by some one from Austin over telephone, who claimed to be the representative of the American National Bank. The objection is that the evidence does not identify the American National Bank or any of its officers as the party who telephoned to Johnson. The conversation between the two parties over the telephone was relevant evidence, provided it was not objectionable on the ground urged by the appellants. There are some facts and circumstances tending to identify the representative of the American National Bank as the party with whom Johnson had the conversation over the telephone. The party stated that it

was the American National Bank that desired the information from Johnson; and it appears, from the facts and circumstances in evidence, that the American National Bank was likely the only party here in Austin who had any interest in telephoning to the station agent at Kyle regarding these cattle; and such telephone communication from the bank was in keeping with the instructions that had been previously given by Littlefield. Not that Littlefield had stated to the bank to telephone, but he did state to the representative of the bank here in Austin what he expected to be done with the cattle, and, substantially, to look after the matter, as Littlefield was not present, and did not intend to be present here in the city of Austin when the cattle were to be shipped. It does not appear from the evidence that anyone, as the representative of the American National Bank, went in person to Kyle to see to the shipment of the cattle, after Littlefield had made the agreement with Poulton, nor does it appear that any letter was sent to Poulton concerning the matter; but the only evidence of communciation at all in keeping with Littlefield's instruction was over the telephone. The identity of the party as the representative of the American National Bank who telephoned to Johnson, was a question of fact to be passed upon by the jury. 27 Am. & Eng. Ency. Law, 1091; Wolf v. Missouri Pac. Ry., 97 Mo., 473, 11 S. W. Rep., 51; Railway v. Heidenheimer, 82 Texas, 95.

There are several assignments of errors that complain of the action of the trial court in overruling the motion for new trial on account of the insufficiency of the evidence to support the verdict. Our findings of fact dispose of these assignments.

There are also objections urged to the charge of the court, and special charges submitted at the request of appellee. These assignments are overruled. An extended discussion of these questions would possibly serve no useful purpose; but we have carefully considered the points raised in the assignments that complain of the action of the trial court in refusing charges at the request of appellant, and of the charges given by the trial court at the request of appellee, and those that complain of the main charge of the court. We are of opinion that none of these assignments are well taken.

The evidence of witnesses Mitchell and Jackson as to the number and identity of the cattle was admissible.

There is an assignment of error in the record, wherein it is contended that the appellee's remedy was not for damages against the appellants, but that it should follow the cattle and seek its remedy in foreclosing the mortgage held by it against them. Appellee's mortgage authorized it to take possession of the cattle upon default of payment; but however, independent of this provision in the mortgage, it has been definitely settled in this State that a mortgagee has remedy for damages against one who, without consent, converts the mortgaged property to the extent of the value of the property, not to exceed the mortgage debt. Scaling v. First Nat. Bank, 87 S. W. Rep., 715, and authorities there cited.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*