JESSE FRENCH PIANO & ORGAN CO. et al. v. ELLIOTT.

(Court of Civil Appeals of Texas. Texarkana. April 2, 1914.)

1. APPEAL AND ERROR (§ 395*)—EFFECT OF FAILURE TO GIVE SECURITY OR MAKE AFFIDAVIT.

Under Rev. St. 1911, art. 2098, providing that, where appellant or plaintiff in error is unable to pay or secure the costs of appeal, he may appeal upon making strict proof of his

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

inability to pay the costs of appeal before the county judge or the court trying the case, a writ of error would be dismissed where plaintiff in error neither filed an appeal bond nor, in lieu thereof, made proof of her inability to pay the costs.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 3127; Dec. Dig. § 395.*]

2. APPEAL AND ERROR (§ 389*)—SECURITY FOR COSTS — AFFIDAVIT OF INABILITY TO PAY COSTS.

Under Rev. St. 1911, art. 2098, requiring proof of appellant's inability to pay the costs of the appeal to be made before the county judge, or court which tried the cause, an affidavit made by appellant's attorney before a notary public was insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2072–2076; Dec. Dig. § 389.*]

3. APPEAL AND ERROR (§ 389*)—SECURITY FOR COSTS—AFFIDAVITS.

Rev. St. 1911, art. 2104, authorizing an appellate court to allow the appellant to amend a defective appeal bond by filing a new bond, does not authorize the filing of a new affidavit of plaintiff in error's inability to pay the costs on appeal, in lieu of a defective affidavit filed with the petition in error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2072–2076; Dec. Dig. § 389.*]

4. CHATTEL MORTGAGES (§ 161*)—POSSESSION OF PROPERTY—PROVISIONS OF MORTGAGE.

A provision of a chattel mortgage, authorizing the mortgagee to take possession of the mortgaged property, wherever it might be found, and sell it at private or public sale upon default or if the mortgagee felt unsafe or insecure before maturity of the security debt, was valid and entitled the mortgagee to take possession without the mortgagor's consent, if he could do so peaceably.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 282–285; Dec. Dig. § 161.*]

5. CHATTEL MORTGAGES (§ 147*)—RIGHTS OF MORTGAGEES AS AGAINST THIRD PERSONS.

A party to whom mortgaged pianos were delivered by the mortgagor for tuning and repairs had no right to retain possession until its charges for storage, tuning, and repairs were paid, as against a mortgage, whose mortgage entitled him to take possession at any time, where it knew of the mortgage, and he did not agree that the pianos might be placed with it for repairs and tuning.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 242; Dec. Dig. § 147.*]

6. CHATTEL MORTGAGES (§ 173*)—ACTIONS BETWEEN MORTGAGEE AND THIRD PERSON—SUFFICIENCY OF EVIDENCE.

In an action for conversion by a chattel mortgagee of pianos against a party which claimed the right to hold them until its charges for tuning, storage, and repairs were paid, evidence held insufficient to show that possession of the pianos was delivered to it by the mortgagor, assuming that that would entitle it to retain possession.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 307, 309, 316–326; Dec. Dig. § 173.*]

7. CHATTEL MORTGAGES (§ 170*)—ACTS CONSTITUTING CONVERSION—REFUSAL TO DELIVER ON DEMAND.

A party who acquired possession of mortgaged pianos without the consent of either the mortgagor or mortgagee had no right to refuse to deliver them to the mortgagee, whose mortgage entitled him to take possession at any time, unless its charges for storage, tuning, and repairs were paid, and unless the mortgagor consented to such delivery, and by so refusing it converted them and became liable for their value.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 305; Dec. Dig. § 170.*].

Error to District Court, Dallas County; Kenneth Foree, Judge.

Action by J. T. Elliott against the Jesse French Piano & Organ Company and Nida H. Hopkins. Judgment for plaintiff, and defendants bring error. Writ of error sued out by the defendant Hopkins dismissed. Judgment affirmed as to defendant company.

The suit was by Elliott against Miss Nida H. Hopkins and the Jesse French Piano & Organ Company. As against Miss Hopkins, Elliott sought a recovery for a balance due and unpaid on a promissory note for $1,500, interest and attorney's fees in his favor, made by her April 24, 1908, and, as against the piano and organ company, a recovery of the value of three Ivers & Pond pianos and two Starr pianos, which he alleged Miss Hopkins had mortgaged and conveyed to him as security for the payment of the note, and which, he further alleged, the piano and organ company had wrongfully converted to its own use. As alternative relief, in the event it was determined the piano and organ company had not converted the pianos, Elliott sought, as against both it and Miss Hopkins, a foreclosure of the mortgage liens he asserted against the pianos. The trial of the cause in the court below resulted in a judgment as follows: (1) In favor of Elliott against Miss Hopkins for $1,371.30 as the balance, principal, interest, and attorney's fees, due on the note, and foreclosing the lien asserted by Elliott against the three Ivers & Pond pianos; (2) in favor of Elliott against the piano and organ company for $700, as the value of the two Starr pianos found to have been converted by it; (3) in favor of the piano and organ company against Elliott for $300, as the sum due it as storage and drayage charges on the three Ivers & Pond pianos. By the terms of the judgment the $300 adjudged in favor of the piano and organ company against Elliott was to operate as a credit on the judgment for $700 in his favor against it, and the said $700 adjudged in Elliott's favor against said piano and organ company was to operate as a credit on the judgment for $1,371.30 in favor of Elliott against Miss Hopkins.

U. F. Short, Geo. M. Feild, and Cocke & Cocke, all of Dallas, for plaintiffs in error. W. A. Kemp and A. B. Lacy, both of Dallas, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1-3] The judgment is before us for review on a writ of error sued out by Miss Hopkins, and also on a writ of error

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

sued out by the piano and organ company. But we cannot consider the objections thereto urged by the former, because she failed to comply with the law which required that she should either file a bond or, in lieu thereof, should make proof of her inability to pay the costs of an appeal. Article 2098, R. S. 1911; De la Vega v. League, 2 Tex. Civ. App. 252, 21 S. W. 565; Bank v. Carper, 28 Tex. Civ. App. 334, 67 S. W. 188; Stafford v. Blum, 7 Tex. Civ. App. 283, 27 S. W. 12; Jamison v. Land Co., 77 S. W. 969; Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576. At the time she filed her petition for the writ, Miss Hopkins filed an affidavit made by her attorney before a notary public that she was unable to pay the costs of the appeal or any part thereof, or to give security therefor. The statute referred to required that she should make proof of her inability to pay the costs before the county judge of the county where she resided, or before the court which tried the cause. Filing the affidavit mentioned above did not satisfy the requirement of the statute. Graves v. Horn, 89 Tex. 77, 33 S. W. 322; Bargna v. Bargna, 123 S. W. 1143. On the day the cause was submitted to this court, Miss Hopkins filed with the clerk here her affidavit, made before the county judge of Dallas county, that she was unable to pay the costs of the appeal or any part of same. But the filing of this affidavit cannot be given any effect. The statute (article 2104, R. S. 1911) authorizing the filing of a new appeal bond to cure a defect in one previously filed does not authorize the filing of a new affidavit to cure defects in an affidavit previously filed in lieu of such a bond. Washington v. Haverty Furniture Co., 136 S. W. 832; Wood v. Railway Co., 43 Tex. Civ. App. 590, 97 S. W. 323. Under the circumstances stated, we must sustain appellant's motion to dismiss the writ of error sued out by Miss Hopkins.

The piano and organ company insisted in the court below, and insists here, that the testimony showed that Elliott and Miss Hopkins placed the five pianos with it to be repaired, tuned, and sold; that thereafterwards neither of them had a right to the possession thereof as against it until its charges for the storage, etc., were paid; and that, it appearing its charges had not been paid, it was not guilty of a conversion as against Elliott, when, on his demand therefor, it refused to deliver the pianos to him. Its contention, so far as it applied to the three Ivers & Pond pianos, was sustained by the court below, and the jury was instructed to find, and did find, in its favor on account of the storage, etc., of those pianos. The contention, so far as same applied to the two Starr pianos, was overruled; and, on the theory that the undisputed testimony showed that said piano and organ company had unlawfully converted those pianos, the jury was instructed to find against it for their value. The question presented by the assignments is as to the correctness of the conclusion reached by the trial court that it appeared, as a matter of law, that the piano and organ company had converted the two Starr pianos.

[4-7] By the terms of the mortgage covering the Starr pianos, Elliott was authorized to take possession thereof "wherever they may or can be found, and sell the same at private or public sale to the highest bidder," in the event Miss Hopkins made default in the payment of the debt it secured, or in the event, at any time before the indebtedness matured, Elliott "felt unsafe or insecure." It is settled that such a stipulation in a mortgage is valid, and that the mortgagee, by virtue thereof, may take possession, if he can do so peaceably, of the mortgaged property without the mortgagor's consent. Singer Mfg. Co. v. Rios, 96 Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901. It appearing from the testimony that the indebtedness secured by the mortgage had matured, the effect of the decision cited is to show that Elliott was entitled to the possession of the pianos as against Miss Hopkins. Was he also entitled to the possession thereof as against the piano and organ company, without first paying charges demanded by them as storage, etc., thereon? Clearly he was not, if it was true, as that company contended it was, that he had agreed that the pianos might be placed with it to be repaired, tuned, etc. But there was no testimony showing Elliott had so agreed. On the contrary, it conclusively appeared that the piano and organ company acquired possession of the pianos without either his knowledge or consent. Therefore a right in that company to retain possession of the pianos until the charges it claimed against same were paid cannot be predicated on an agreement on the part of Elliott. Can it predicate such a right, as against Elliott, upon the fact, if it was a fact, that Miss Hopkins had delivered the possession of the pianos to it for the purposes stated? We think not. It knew that Miss Hopkins had conveyed the property to Elliott to secure her indebtedness to him, and therefore that she could not by her act, and without his consent, create in its favor a lien and rights superior to his. If however, it should be said that the law is that a person, with notice of a mortgage, containing a stipulation like the one in question, in possession of the mortgaged property under a contract with the mortgagor to repair, etc., same, is entitled to retain possession thereof until his charges for such repair, etc., are paid, as against the mortgagee, we would feel constrained to hold that this is not that kind of a case, because it does not appear, from any testimony in the record, that Miss Hopkins delivered the possession of the pianos to the piano and organ company for such a purpose, or, indeed, that she delivered possession of same to it at all. It appeared that Miss Hopkins had been conducting a music school in Dallas, and

that in April, 1910, she closed the school, going to Illinois, where she remained until February, 1911. She testified that when she left Dallas the pianos were in the building where she had been using them, and that she had no recollection of having authorized the piano and organ company to take same from said building. The only other testimony with reference to this phase of the case was that of the manager of the piano and organ company, who said that the two Starr pianos "came down to the store (of the piano and organ company) when Miss Hopkins' conservatory was closed, and came on a telephone message." It seems to us that the testimony that the pianos "came on a telephone message," in the face of Miss Hopkins' testimony that she had no recollection of having authorized the piano and organ company to take same from the building where she left them when she went to Illinois, would not have justified a finding that she sent the message or had it sent, and thereby authorized the piano and organ company to take possession of the pianos. If it would not, then clearly it did not otherwise appear from the testimony than that said piano and organ company wrongfully, both as to Miss Hopkins and Elliott, was in possession of the pianos at the time Elliott demanded same. Under such circumstances, the piano and organ company had no right to refuse to deliver the pianos to Elliott, unless charges it claimed against same were paid, and unless Miss Hopkins consented to such delivery. Its refusal, we think, was such a conversion as rendered it liable to Elliott for the value of the two pianos. 28 A. & E. Enc. Law, pp. 705, 708; Scaling v. Bank, 39 Tex. Civ. App. 154, 87 S. W. 717.

There is no error in the judgment, in so far as it is against the piano and organ company; and it is affirmed.