**CARTER v. HAYNES.   (No. 6825.) \***

(Court of Civil Appeals of Texas.   Austin. Jan. 7, 1925.   Rehearing Denied Feb. 18, 1925.)

1. **Trial ⬦351(1)—Refusal to submit case of special issues on timely written request therefor held error.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1984a, 1985, refusal to submit case on special issues on written request therefor made before court read its general charge *held* error.

2. **Trial ⬦349(1)—Statute providing for submission of case on special issues is mandatory.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing for submission of case on special issues on written request therefor, if suit is of such nature that it can be determined on submission of special issues, is mandatory.

3. **Trial ⬦349(2)—Court exercises discretion in determining whether case can be determined on special issues.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing for submission of case on special issues, if case is of such nature that it can be determined on submission of special issues, the trial judge exercises his discretion as to whether the case is of such nature, subject to review as to whether case can be so determined.

4. **Appeal and error ⬦218(2), 930(3)—Failure of court to submit particular issue not available unless complaining party made written request therefor.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1984a, 1985, failure of court to submit particular issue is not available on appeal, unless written request for submission of the issue was made by complaining party, since it will be presumed, in the absence of such request and submission of such issue, that issue was found by trial court in favor of judgment.

5. **Contracts ⬦176(1)—Legal effect of written contract was question for court, and not jury.**

Legal effect and meaning of written contract was question for court and not jury.

6. **Trespass ⬦7—Trespasser liable for injury, regardless of negligence.**

Trespasser who damaged oil well casing in attempting to draw casing from well without permission of person entitled to possession thereof was liable for damage sustained, regardless of whether he was negligent.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error dismissed for want of jurisdiction March 24, 1925.

**7. Chattel mortgages ☞170(1)—Assignee of oil drilling contract held trespasser in attempting to draw casing from well without permission of mortgagee entitled to possession.**

Assignee of contract to drill oil well, who knew at time of assignment and when contract entitling him to complete well was entered into, that mortgagee of casing was entitled to possession thereof, because of default by mortgagor, was trespasser when he attempted to draw casing from well without mortgagee's consent, and was therefore liable to mortgagee for damage done, even though he was not negligent.

**8. Trespass ☞1—"Trespass" defined.**

A "trespass" is a transgression or wrongful act, and in its most extensive signification includes every description of wrong, and a "trespasser" is one who does an unlawful act, or a lawful act in an unlawful manner, to the injury of the person or property of another; citing Words & Phrases, First Series, Trespass.

**9. Pleading ☞339—Submission of negligence of defendant erroneous, though petition alleged negligence, in view of plaintiff's exception to answer and objection to submission of case on theory of negligence.**

In action for damage to oil well casing while attempting to draw it from well in which plaintiff, by exception to answer, informed court that he relied solely on a trespass by defendant, and objected to submission of case on theory of negligence, submission of case to jury on theory of negligence was error, even if petition alleged negligence, since in such case plaintiff waived cause of action based on negligence, and confined himself to theory that defendant was liable as trespasser.

**10. Chattel mortgages ☞177(1)—Mortgagee entitled to immediate possession could sue for trespass.**

Mortgagee who was entitled to immediate possession of mortgaged property could sue for trespass, though not in actual possession at time of trespass.

**11. Chattel mortgages ☞26— Provision entitling mortgagee to take possession and sell property on mortgagor's default held valid.**

Provision in chattel mortgage giving mortgagee right to take possession, sell property, and apply proceeds to deed on mortgagor's default *held* valid.

**12. Trespass ☞49—Measure of damages for injuring oil well casing stated.**

Where defendant tried to draw casing from oil well without plaintiff's permission, and a part of the casing fell back in the well, the measure of the damages was the value of the casing destroyed, less the expense of drawing it, if plaintiff could not have drawn the destroyed casing for the same expense that he incurred in drawing the other portion, or merely the value of the destroyed casing if he could have drawn all the casing including that destroyed at the same expense necessarily incurred in drawing other part not destroyed.

Error from District Court, Comanche County; J. R. McClellan, Judge.

Suit by Wilkie Carter against J. H. Haynes. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with instructions.

Shepherd & Lankford, of Cisco, for plaintiff in error.

Grisham Bros., of Eastland, for defendant in error.

BLAIR, J. Wilkie Carter, plaintiff in error, hereinafter designated appellant, sued J. H. Haynes, defendant in error, hereinafter designated appellee, for $1,000 damages for injury to certain oil well casing on which appellant had a mortgage; the injury was alleged to have been done by appellee while attempting to draw the casing from a well in which it had been run. Appellant's petition alleged facts constituting appellee a trespasser in possession of the casing at the time he injured it.

Appellee, in addition to a formal answer, pleaded certain written contracts for his authority to draw the casing, and that in attempting to draw the casing he did so in a careful and painstaking manner; to which defenses pleaded, appellant filed general and special exceptions, which were overruled by the court.

The cause was tried to a jury on a general charge, over appellant's objection and written requests to submit it on special issues. The jury found for appellee, and the court so rendered judgment, from which this writ of error is perfected.

[1] The trial court erroneously refused the written request of appellant to submit the case to the jury upon special issues of fact. Article 1984a as amended in 1913 (Laws 1913, c. 59 [Vernon's Sayles' Ann. Civ. St. 1914]), reads:

"Art. 1984a. *Submission of Special Issues.*— In all jury cases the court, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately, and without being intermingled with each other, so that each issue may be answered by the jury separately. In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and the court may submit said cause upon special issues without request of either party, provided that if the nature of the suit is such that it cannot be determined on the submission of special issues, the court may refuse the request to do so, but the action of the court in refusing may be reviewed on proper exception in the appellate court, and this article shall be construed in connection with article 1985 of chapter 14, title 37, Revised Statutes.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Art. 1985. *Special Verdict, Requisites of; Failure to Submit Issue not Reversible Error Unless Request, etc.*—The special verdict must find the facts established by the evidence, and not the evidence by which they are established; and it shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleading. But the failure to submit any issue shall not be deemed a ground for reversal of the judgment, upon appeal or a writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

Appellee, before the court read its general charge to the jury, requested in writing that the case be submitted upon special issues. In approving the bill of exception relating to this question, the trial judge gave the following as his reasons for refusing the request:

"No request to submit on special issues until I was dictating my general charge, and when requested by plaintiff he did not have or present to me any written issues he desired submitted, or even suggest what issues he desired submitted, and did not do so until after I had completed and delivered to him my charge."

[2, 3] These qualifications do not explain away the error asserted in the bill of exception. The provisions of article 1984a, supra, are mandatory. Buckholts State Bank v. Graf (Tex. Civ. App.) 200 S. W. 858. The statutes make only one exception which excuses the trial judge in refusing the written request to submit the case upon special issues, and that is, where the case cannot be so determined, the trial judge in such case exercises his discretion, subject to review, as to whether the case can be so determined. Dorsey v. Codgell (Tex. Civ. App.) 210 S. W. 303. No contention is made here that the issues of fact sought to be determined could not have been properly submitted upon special issues, nor does the trial judge base his qualifications of the bill of exception upon that ground. In fact, we think it clear that the case could have been more clearly submitted upon special issues than upon the general charge given.

In Jackson v. Martin (Tex. Civ. App.) 218 S. W. 4, it was held reversible error to refuse to submit the case on special issues, on written request therefor before the general charge had been submitted to the jury, although the general charge had been prepared and delivered to counsel for inspection, and although the counsel requesting submission on special issues had made his objections to the general charge so prepared. See, also, Klyce v. Gundlach (Tex. Civ. App.) 193 S. W. 1092.

The question of whether special issues accompanying the written request to submit on special issues are not raised by the evidence, or because they do not incorporate correct issues as a matter of law, is another and different question from the question of whether the court erred in refusing to comply with the mandatory provisions of the above statute and submit the case upon special issues upon written request to do so by one of the parties to the suit. It was held in Shaw v. Garrison (Tex. Civ. App.) 174 S. W. 943, that:

"Submitting special issues of fact raised by the evidence to the jury for their determination, or refusing such submission, is, however, in no sense the giving or refusing to give a special charge, and hence in no respect controlled by the technical and particular provisions of the amendments and their construction referred to. 'Such a request is neither a charge given nor a requested charge refused, and it stands upon a very different footing.' G., H. & S. A. Ry. Co. v. Cody, 92 Tex. 632, 51 S. W. 329; Texarkana & Ft. Smith Ry. Co. v. Casey, 172 S. W. 729. The objection in the one case is to the law as applied by the trial judge arising upon the facts, while in the other case the objection is to the method and manner of directing the jury what facts they shall determine from the evidence."

[4] The provisions of article 1985, supra, which by legislative enactment must be construed with article 1984a, supra, do not relate to the question of whether or not the trial court shall submit the case upon special issues upon written request. Article 1984a provides the procedure by which it is determined whether the case shall be submitted upon a general charge or upon special issues. That being determined, article 1985 provides that:

"It shall be the duty of the court, when it submits a case * * * upon special issues, to submit all the issues made by the pleading."

Neither of these statutes requires the party requesting the submission upon special issues to also submit along with such request the special issues desired, but the last above quotation from article 1985 makes it the duty of the trial court to prepare and present "all the issues made by the pleading." The other provisions of article 1985 all relate to the manner and method of objecting to the giving or refusing of special issues, and to the court's failure to submit some issues raised by the pleadings and evidence. That is, the failure of the court to submit any particular issue along with other issues prepared and presented by it cannot be taken advantage of by the complaining party, unless that party shall have requested the submission of such issue in writing; or, if an issue raised by the pleadings and the evidence is omitted and no request is made in writing by the complaining party for its submission, it will be presumed to have been found by the trial

court in favor of the judgment. This same rule was announced by the Supreme Court in the case of Ry. Co. v. Cody, 92 Tex. 632, 51 S. W. 329, supra, in which case the court was construing a former similar statute upon this subject.

[5] The court also erred in submitting to the jury for its determination the legal effect and meaning of the written contracts pleaded by appellee as his authority or right to draw the casing from the well. It is the duty of a trial judge to interpret, or to inform the jury of the legal effect and meaning of, a written contract pleaded as a defense to the cause of action asserted, and to also instruct or inform them of the legal effect or meaning of any instrument of writing or paper introduced in evidence. Hughes, Instructions to Juries, §§ 156–381; Radford Grocery Co. v. Jamison (Tex. Civ. App.) 221 S. W. 998.

[6] The court also erred in submitting the case to the jury upon the theory of negligence, that is, for instructing the jury that, if they found that appellee drew the casing in a careful and painstaking manner, he would not be liable for injuries thereto; for the reason that the pleadings and the undisputed testimony made appellee, Haynes, a trespasser in possession of the casing at the time of his injury to it, and his liability was therefore absolute, without regard to whether or not he was negligent in drawing the casing, and only the issue of the amount of damages should have been submitted to the jury.

On November 3, 1920, appellant Carter sold one J. F. Singleton 2,800 feet of oil well casing, and in part payment thereof Singleton executed to appellant his note for $3,000 due February 3, 1921, and secured by a chattel mortgage on the casing sold him. The mortgage provided:

"That in default of the payment of the said $3,000 when due, Feb. 3, 1921, the said Wilkie Carter might take possession of the said 2,800 feet of casing without process of law and sell same at private or public sale, and apply the proceeds thereof to payment of said indebtedness, and pay balance, if any, to said J. F. Singleton."

The casing was run in a well drilled on Singleton's farm, in Comanche county, Tex., by the drilling company with whom Singleton's lessee of the oil and gas rights in his land had contracted. The mortgage was duly recorded in that county. Singleton defaulted in the payment of the note when due. Appellant alleged that in June, 1921, Singleton gave him authority to take possession of the casing, sell it, and apply the proceeds to the note. This allegation and the proof of it are immaterial, since appellant had the right of possession after default under the terms of the mortgage above quoted. Prior to this time, however, the drilling company had, for

some reason not shown by the testimony, abandoned the drilling of the well in which the casing in question was run, and left the casing in the well. Appellant went to the well about August 1, 1921, to pull the casing, for the purpose of selling it and applying the proceeds to the mortgage debt, but W. E. Lowe notified him that he had been appointed receiver of the company that had drilled the well, and of the machinery at the well, and of the casing; whereupon appellant did not attempt to draw the casing. Thereafter, about the "middle" of August, 1921, appellee, Haynes, approached appellant Carter with a proposition to purchase the casing as it stood in the well, for $1,500. Carter agreed, provided such sale was satisfactory to Singleton. Earnest money was deposited, according to the testimony of appellee, Haynes, with a bank to secure his part of the contract of purchase, the only condition being that his attorney approved Carter's title to the casing. Appellee further testified that his attorney rejected, or turned down, Carter's title to the casing; but that pending his attorney's examination of the title he went to the well, without the knowledge or consent of appellant, Carter, and attempted to draw the casing; that after he had pulled it about 80 feet it parted and all but four joints dropped, back in the well, and, of course, jammed and injured it; that he then placed the four joints back in the well, and never said anything to appellant about it. Thereafter appellant applied to the court in which the receivership of the drilling company that had drilled the well was pending, and secured an order to draw the casing and apply it to Singleton's debt, and in October, 1921, went to the well and learned for the first time that appellee had attempted to pull the casing, and of the injury thereto. Appellant drew all the casing, except 1,182 feet, which was jammed and wrenched by reason of the fall and could not be drawn, and sold it, and, after deducting the expenses incident to drawing it and making it marketable, applied the proceeds of the sale, amounting to $992.75, to Singleton's note. Appellee, Haynes, admits that he had no authority from appellant, Carter, to draw the casing; the facts show that he had both constructive and actual notice of appellant's mortgage on the casing before he drew it, and he further admits that he might have received a letter, though he had no recollection of it, which Carter testified he wrote him, telling him not to pull the casing, before he attempted to do so. Appellee, Haynes, pleaded and testified that he relied solely upon the following contract for authority to draw the casing:

"Eastland, Texas, May 24, 1921. No. 1 and No. 7 Comanche. The Prairie Oil & Gas Company, Eastland, Texas—Gentlemen: Referring to the contract dated July 30, 1920, between your company and the Rucker Oil & Gas Com-

pany, wherein you promise ·to pay thirty-five hundred ($3,500.00) dollars upon the completion of a dry hole on the Singleton farm in the N. E. ¼ of Sec. 34, Blk. 2, H. & T. C. Ry. Co. lands in Comanche county, Texas, according to the terms of said contract, with the Rucker Oil & Gas Company, I have arranged with the Rucker Oil & Gas Company to complete the well. I understand you have advanced the Rucker Oil & Gas Company $1,750.00 out of the $3,500.00, and I propose to take up the work of completing the well. This letter is to secure your permission to the assignment of the contract covering the remaining $1,750.00 which may become due thereunder. In case said well produces an average of fifty barrels or more for thirty days, I agree to refund to you the $1,750.00 which you have already advanced under the contract, and this agreement is made without effecting the liability of Rucker Oil & Gas Company, Jess W. Harvey, J. D. Bell, or J. F. Singleton under their contract dated August 18, 1920. Very truly yours, J. H. Haynes.

"We join in the above request. The Rucker Oil and Gas Company, by Jess W. Harvey. Jess Harvey. J. D. Bell. J. F. Singleton.

"We agree to the assignment of the contract above mentioned on the terms above set out. The Prairie Oil and Gas Company, by Wm. Z. Sutton."

He also pleaded the lease by Singleton of his land and the drilling contract of the lessee with the drilling company, of which the above-quoted contract is an assignment; but we do not deem these material to a disposition of this case. Appellant was not a party to any of these contracts. It was also pleaded and proved by appellee that, in order for him to carry out his contract to deepen the well in question, it was necessary to draw the casing to cut off the flow of water, and that he pulled it in a careful and painstaking manner. It will be noted ·that the above contract or assignment relied upon by appellee for authority to draw the casing was executed after appellee's right of possession to the casing under the terms of the mortgage existed, of which right of possession appellee had both actual and constructive notice.

[7, 8] The facts above detailed constitute appellee a trespasser in possession of the mortgage chattel at the time he injured it. A trespass, under modern decisions, is a passing over, or beyond our right, that is, a transgression or wrongful act, and in its most extensive signification includes every description of wrong. 8 Words & Phrases, First Series, p. 7088, and cases there cited.

In 38 Cyc. p. 499, a trespass is defined "as being completed when there is an unlawful disturbance by force of another's possession * * * or immediate right of possession."

A trespasser is one "who does an unlawful act, or a lawful act in an unlawful manner, to the injury of the person or property of another." 8 Words & Phrases, First Series, p. 7094.

[9] Appellee in this connection defends the action of the trial court in submitting the case to the jury upon the theory of negligence on the part of appellee in drawing the casing to determine his liability, contending that appellant's petition did not allege a cause of action against appellee based upon a trespass, but only alleged one based on negligence. This contention is without merit. Appellant by exception to appellee's answer informed the trial court that he relied solely upon a trespass by appellee upon his right of possession of the mortgaged property to fix his liability for the injury thereto. If, under these circumstances, appellant had alleged a cause of action based upon negligence, he would have been held to have waived it, because he did not insist upon it, and objected to the court submitting the case upon that theory. It was the duty of the trial court in this state of the record to have submitted no issue to the jury if, in its judgment, no cause of action for trespass was alleged. But appellant's petition did allege facts which constituted appellee a trespasser at the time he injured the casing, which in law is sufficient. The petition alleged that appellee took possession of certain personal property and injured it, to which appellant had the immediate right of possession, without his knowledge or consent, and with notice of which immediate right of possession, which under the above definitions of trespass and trespasser sufficiently alleges a cause of action for trespass.

[10] Appellee also insists that, since the evidence showed that appellant was not in actual possession of the mortgaged chattel at the time of the alleged trespass, he could not maintain such action, therefore the submission of the issue of negligence, if erroneous, was harmless; the trial court having rendered the only judgment that could have been rendered under the testimony. This contention is not sustained. Whatever may have been the rule heretofore, it is now well settled that one out of possession of property, but entitled to immediate possession, may maintain a suit for trespass upon it. The more modern rule as affecting the rights of a mortgagee to bring suit for trespass upon the mortgaged chattel is announced in 11 C. J. 599–601, as follows:

"A mortgagee of personal property may maintain a possessory action against one who wrongfully takes the property from his possession, and, where the mortgagee is entitled to possession he may maintain an action for its conversion, or trespass for damages to his possession, or an action on the case, even before condition broken."

The cases cited in note 88 of the same authority support the text. Our Texas courts have always held that a mortgagee entitled to possession of the mortgaged property upon breach of the condition of the mortgage may maintain a suit for injury to the mortgaged

chattel by a trespasser. Piano Co. v. Elliott (Tex. Civ. App.) 166 S. W. 29; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683; Johnson v. Oswald (Tex. Civ. App.) 151 S. W. 1164; Barron v. San Angelo Nat. Bank (Tex. Civ. App.) 138 S. W. 142; Buffalo Pitts Co. v. Stringfellow-Hume Hardware Co., 61 Tex. Civ. App. 49, 129 S. W. 1161; American Nat. Bank v. San Marcos Nat. Bank, 41 Tex. Civ. App. 392, 92 S. W. 439; Scaling v. Wichita Falls First Nat. Bank, 39 Tex. Civ. App. 154, 87 S. W. 715; Cassidy v. Willis & Connally, 33 Tex. Civ. App. 289, 78 S. W. 40; Hockaday-Gray Co. v. Jonett & Campbell (Tex. Civ. App.) 74 S. W. 71; Parlin, etc., Co. v. Moore, 28 Tex. Civ. App. 243, 66 S. W. 798; Crane v. McGuire (Tex. Civ. App.) 64 S. W. 942; Parlin, etc., Co. v. Hanson, 21 Tex. Civ. App. 401, 53 S. W. 62; Jones v. Hess (Tex. Civ. App.) 48 S. W. 46; Godair v. Tillar, 19 Tex. Civ. App. 541, 47 S. W. 553; Moore v. Masterson, 19 Tex. Civ. App. 308, 46 S. W. 855; Scott Grocer Co. v. Carter (Tex. Civ. App.) 34 S. W. 375; Fouts v. Ayres, 11 Tex. Civ. App. 338, 32 S. W. 435; Willis v. Daingerfield Bank (Tex. Civ. App.) 30 S. W. 81; Western Mortg. Co. v. Shelton, 8 Tex. Civ. App. 550, 29 S. W. 494; Williams v. Beasley, 5 Tex. Civ. App. 408, 25 S. W. 321. Although such stipulation in case of default does not vest title in the mortgagee under Texas decisions, yet it gives him the right of possession for the purpose of selling the property to discharge the lien, and for such purpose he may maintain such suit as an absolute owner of property might maintain. See Texas authorities above cited.

Cobbey on Chattel Mortgages, vol. 1, p. 659, § 484, announces the rule now in force in practically all states to be:

"The one entitled to possession is the proper one to sue for interference with that possession. This is usually the mortgagor before default, and the mortgagee after default; * * * All that is necessary to enable the mortgagee to maintain an action is that he have a present right of possession."

[11] As to appellant's right of possession of the casing at the time of the injury to it by appellee, there can be no question. His mortgage on the casing contained a stipulation that, in default of the payment of the debt secured, he had the right to take possession, sell the property, and apply the proceeds to the debt. Such a stipulation is valid, and authorized the mortgagee to enter the mortgagor's premises and take the possession of the mortgaged property for the purpose of sale in satisfaction of the lien created by the mortgage. Singer Sewing Machine Co. v. Rios, 96 Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901; State Exchange Bank v. Smith (Tex. Civ. App.) 166 S. W. 666; Jesse French Piano Co. v. Elliott (Tex. Civ. App.) 166 S. W. 29; Butts v. Lucia (Tex. Civ. App.) 153 S. W.

686; Hughes v. Smith, 61 Tex. Civ. App. 443, 129 S. W. 1142; Groos v. Iowa Park Nat. Bank (Tex. Civ. App.) 72 S. W. 402; Wedig v. San Antonio Brewing Assoc., 25 Tex. Civ. App. 158, 60 S. W. 567; 11 C. J. 559, note 10; Cobbey on Mortgages, § 510.

The mortgage was recorded in the county where the casing was situated. The mortgagor had breached the condition of the mortgage by failure to pay the debt secured by it when due. Appellee had constructive, if not actual, notice of the terms of the mortgage. He had both actual and constructive notice of the default of payment by the mortgagor and of appellant's right of possession at the time he took possession of the casing and attempted to draw it. He admits that he had no authority from appellant to draw the casing, and his liability as a trespasser is therefore established by the undisputed facts.

The fact that it may have been necessary for appellee to draw the casing to carry out his contract with the mortgagor to deepen the well cannot affect the right of appellant to the possession of the property, which right existed at the time appellee made his contract to deepen the well, and appellee had notice of such right of possession. The mortgagor of the casing had no right, after his breach of the mortgage condition, without the consent of the mortgagee, to contract with a third person to draw the casing from the well in which it had been run, for such drawing, according to all the witnesses, was accompanied with great danger of injury to the casing. It was also subjecting it to a use to which it had not theretofore been employed.

We find no case exactly parallel to the case at bar; but think it should be controlled by the rule applied in cases where the mortgaged property is a building on the mortgagor's land, but not on the land on which it is situated. In such cases the mortgagor could not contract with a third person to remove the building so as to enable him to erect another where the mortgaged building stood, without the consent of the mortgagee, and the said third person moving the building with notice of the mortgagee's immediate right of possession under the terms of the mortgage, and without his consent, is a trespasser and liable to the mortgagee for the damages sustained. This case is also analogous to those cases where the mortgaged building was torn down by a third person and used in the construction of another building where it stood. The third person would be liable to the mortgagee for damages as a trespasser, provided he had notice of the mortgage and the right of the mortgagee thereunder. Cobbey on Mortgages, § 484, and cases there cited.

[12] In view of what has been said, we reverse and remand the cause, with instructions to the trial court to try only the issue

of the amount of damages appellant has sustained by reason of the injury to his casing by appellee. The measure of damages in cases of this character is the value of the mortgaged property destroyed, where it is totally destroyed, as in this case. Appellant alleged that 1,182 feet of the casing was destroyed by reason of the fall, and further alleged that, if appellee Haynes, had not attempted to have drawn it and dropped it, he could have drawn all the casing at the same expense necessarily incurred in drawing the other part not destroyed. It occurs to us that this properly alleges the measure of damages in this case. The value of the casing destroyed less the expense of drawing it should be the measure of damages, and, if appellant establishes that he could have drawn all the casing, including the 1,182 feet destroyed by appellee, for the same expense that he drew the other portion of the casing, then he should receive its market value at the well. If the jury should determine that he could not have drawn the 1,182 feet of casing for the same expense that he incurred in drawing the other portion, then there should be deducted from the market value of the casing at the well the expense of drawing, and this remainder would be appellant's damages.

The cause is reversed and remanded, with instructions in accordance with the foregoing opinion.

Reversed and remanded, with instructions.