## NATIONAL FIRE INSURANCE COMPANY v. J. W. CARAWAY & COMPANY ET AL.

### Decided May 2, 1910.

**1.—Fire Insurance—Preserving Inventories—Covenant—Breach.**

A policy of fire insurance on a stock of merchandise contained covenants of warranty to the effect that the assured would take a complete itemized inventory of the stock on hand at least once in each calendar year; that the assured would keep and preserve all inventories of stock taken during the current calendar year and also those taken during the preceding calendar year which were on hand when the policy was issued; that said inventories would be securely locked in a fire-proof safe at all times when the building was not actually open for business; and that in the event of a loss by fire each and all of said inventories should be delivered to the insurance company for examination, and that a breach of any of said covenants would render the policy void; the stock of merchandise was destroyed by fire at night, and upon demand by the company for the inventory taken during the current year, the assured failed to produce the same, saying that it had in some way been lost or destroyed and he could not find it. Held, because the covenant of the policy concerning the preservation of the inventories was broken by the assured he was not entitled to recover on the policy.

**2.—Same.**

The loss or destruction without fault or negligence on the part of the assured of an inventory of a stock of merchandise, which inventory the assured in a policy of fire insurance covenanted and agreed to preserve and produce in case of loss by fire, would not defeat the right of the assured to recover on the policy, but the burden would be upon the assured to show that he was in no way responsible for the loss or destruction.

**3.—Insurance—Answers and Statements—Act Construed.**

The provisions of the Act of 1903 (Sayles' Stats., art. 3096aa) to the effect that answers or statements of the insured in a contract of insurance should not vitiate the same unless the matter or thing misrepresented was material to the risk, etc., must be restricted to representations of past or present facts, and can not be applied to agreements to do or not to do future acts.

**4.—Same—Matter of Contract.**

Although it might be shown that the value of the property destroyed by fire exceeded the amount of insurance thereon, and there be nothing to indicate fraud of any kind on the part of the insured, the right to recover in case of loss must be determined by the contract which the parties have entered into.

Appeal from the District Court of Shelby County. Tried below before Hon. James I. Perkins.

*Crane, Seay & Crane,* for appellant.—Where a stock of goods is sold and the policy of insurance thereon is transferred to the purchaser, upon notice to the insurer, if he assents to it, a new and original contract of indemnity arises to the assignee; and where the

policy provides that if an inventory has not been taken within twelve months prior to the date of the policy, one shall be taken within thirty days of the date of the policy or said policy shall be void, the purchaser must take an inventory in detail within thirty days after the date of such assignment or the policy will be void. Bayless v. Mercantile T. M. Ins. Co., 80 S. W., 289; Ellis v. Council Bluffs Ins. Co., 20 N. W., 782; Foster v. Equitable Mut. Ins. Co., 2 Gray, 216; Continental Ins. Co. v. Munns, 22 N. E., 78; Shearman v. Niagara Fire Ins. Co., 7 Am. Rep., 380; Ellis v. Insurance Co. of North America, 32 Fed., 646; Scottish Union & Nat'l Ins. Co. v. Moore, 36 Texas Civ. App., 312.

The uncontradicted testimony showing that appellees had not complied with that part of the iron-safe clause contained in the policy issued to appellees on March 9, 1907, which was to continue for one year, wherein appellees covenanted and agreed to take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory had been taken within twelve calendar months prior to the date of the policy one should be taken in detail within thirty days of the date of said policy or said policy should be null and void from such date, it was the duty of the court to instruct the jury to find for the appellant. Continental Ins. Co. v. Cummings, 98 Texas, 115; Delaware Ins. Co. v. Monger & Henry, 74 S. W., 792; Roberts v. Sun Mutual Ins. Co., 19 Texas Civ. App., 338; Bayless v. Mercantile Ins. Co., 80 S. W., 289; Rives v. Fire Assn. of Philadelphia, 77 S. W., 424; Fire Assn. of Philadelphia v. Masterson, 25 Texas Civ. App., 518; Fire Assn. of Philadelphia v. Calhoun, 28 Texas Civ. App., 409.

The uncontradicted testimony showing that appellees had failed to make and prepare in the regular course of business, from and after the date of said policies, a set of books which would clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, it was the duty of the court to instruct the jury to find for the defendant. Phoenix Ins. Co. v. Padgitt, 42 S. W., 802; Brown v. Palatine Ins. Co., 89 Texas, 590.

The provisions in the policies in suit in regard to the making and preserving of the inventories therein required, being warranties, the question of the materiality of said provision could not be inquired into, and therefore the court erred in submitting to the jury the question of their materiality.

The court erred in submitting to the jury the question of the materiality of the warranties contained in the policy in suit in reference to the making, keeping and preserving the inventories required therein, for the reason that title LVI, chapter 5, article 3096aa, Acts of the Twenty-eighth Legislature, General Laws of Texas, pages 94 and 95, does not apply, and has no reference to promissory warranties. The court therefore erred in submitting to the jury the question of the materiality of said warranties.

*Beard & Davidson* and *Davis & Davis,* for appellee.—The insured substantially complied with the requirements of taking the inventory

and keeping books, and the mere fact that some of them may have been lost and destroyed, and not produced to the adjuster or in the trial, could not invalidate the policy if he can supply the missing information by other satisfactory testimony. Brown v. Palatine Ins. Co., 89 Texas, 590; Liverpool & London & Globe Ins. Co. v. Kearney, 94 Fed., 316; East Texas Fire Ins. Co. v. Harris, 7 Texas Civ. App., 647; Georgia Home Ins. Co. v. O'Neal, 14 Texas Civ. App., 516; 19 Cyc., 764.

Whenever the application for a policy of insurance, or the policy itself, contains a statement or a warranty of the truth of the statements therein contained, no misrepresentation or untrue statement in such policy, if made in good faith by the insured, shall effect a forfeiture or be ground of defense in any suit upon such policy of insurance unless such misrepresentation or untrue statement relate to some matter material to the risk, or in some way actually contributed to the contingency upon which the policy became due and payable, and this shall be a question for the jury to determine in each such case. Rev. Stats., art. 3096aa; Modern Order Praetorians v. Hollmig, 100 Texas, 623; Continental Fire Ins. Co. v. Whitaker, 79 S. W., 119; Penn. Mut. Ins. Co. v. Mechanics' S. B. & T. Co., 72 Fed., 413; McGannon v. Michigan Miller Ins. Co., 89 Am. St. Rep., 501; 19 Cyc., 709, 727; Rev. Stats., art. 3268; Continental Ins. Co. v. Chase, 33 S. W., 602.

PLEASANTS, Chief Justice.—This suit was brought by the appellees to recover upon two fire insurance policies issued by appellant on the 31st of August, 1906, and the 9th of March, 1907, respectively, upon a stock of goods and merchandise owned by appellees and which was destroyed by fire on August 5, 1907.

The petition alleges, in substance, that the first of said policies, same being for the sum of $1,000, was issued by the appellant upon a stock of goods and merchandise owned by R. A. Rushing and situated in the store house of said Rushing in the town of Joaquin, Texas; that on the 7th day of March, 1907, appellees Caraway & Co. purchased said goods and merchandise from Rushing, and with the consent of appellant said policy was transferred and assigned to appellee firm; that on the 9th day of March appellant issued the second policy before mentioned, which was also for the sum of $1,000 and was upon said stock of goods and merchandise; that said property, which was of the value of $12,000, was destroyed by a fire on August 5, 1907, which destroyed the building in said town of Joaquin in which said merchandise business was being conducted, and that appellees had made proof of loss as required by the terms of said policies.

The answer of the defendant admits the issuance of the policies as alleged in the petition and the destruction of the property by fire on August 5, 1907, but claims that it was exempt from liability by reason of the breach by appellees of the covenants of warranty contained in said policies. The covenants of warranty so pleaded by appellant are as follows:

"The following covenant is hereby made a part of this policy and a warranty on the part of the assured:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and unless such inventory has been taken within twelve calendar months prior to the date of this policy and is on hand at the date of this policy, one shall be taken complete in detail within thirty days after the date of this policy, or this entire policy shall be null and void from such date.

"Section 2. The assured will make and prepare in regular course of business, from and after the date of this policy, a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.

"By the term 'complete record of business transacted,' as used above, is meant a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

"If the business of the assured under this policy shall be that of manufacturing, then this complete record must in addition show all the raw material received and all products manufactured therefrom, including the cost of manufacture, and must show all waste in process of manufacture; and must show all the raw material and manufactured property which is taken from the building described, or this entire policy shall be null and void.

"Section 3. The assured will keep and preserve all inventories of stock taken during the current calendar year, and also all those taken during the preceding calendar year which are on hand when this policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The assured will also keep and preserve all inventories taken after the issuance of this policy and all books made and prepared after the issuance thereof, showing record of business transacted.

"The books and inventories, and each of the same, shall be by the assured kept securely locked in a fireproof safe at night and at all times when the building mentioned in the policy is not actually open for business; or, failing in this, the assured shall keep such books and inventories and each of them in some secure place not exposed to a fire which would destroy said building; and in the event of a loss by fire to the personal property mentioned herein said books and inventories, and each of tte same, must be by the assured delivered to this company for examination, or this entire policy shall be null ani void and no suit or action shall be maintained thereon for any such loss.

"It is understood and agreed that this clause and the requirement thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk; and to this insurance, and to any fire loss happening to the property described in this policy."

It is averred that appellees failed to prepare and keep said inventories and books as provided in said policies, and failed to produce same for the inspection of appellant after the fire, and therefore, by

the express terms of the policies, they have become void, and no recovery can be had thereon.

Defendant further pleaded that by the terms of said policies they became void if plaintiff procured any additional insurance on the property without the consent of the defendant, and that this covenant of warranty was breached by plaintiffs, and said policies were therefore void, and no recovery could be had thereon.

The plaintiffs by supplemental petition denied the averments of defendant's answer, and alleged that they had fully complied with all of the agreements and covenants contained in said policies.

The cause was tried in the court below with a jury, and a verdict returned, and judgment rendered in favor of plaintiffs for the sum of $1,643.29.

The evidence shows that the policies were issued as alleged, and that they contained the covenants and agreements pleaded by the defendant. The policy issued to Rushing was, with the consent of appellant, transferred to appellees on March 7, 1907. The fire which destroyed the property occurred during the night of August 5, 1907, at a time when the store was not open for business. An inventory of the stock was taken by Rushing on January 1, 1907, and was turned over to appellees when they purchased the property and business. Appellees took no inventory until August 1, 1907, and the inventory which they began to take on that day was not completed at the time of the fire. This partial inventory showed that the value of the stock on hand at the time of the fire exceeded the amount of the insurance thereon. The only inventory produced by appellees was the incomplete one, begun on August 1, 1907. In regard to his failure to produce the Rushing inventory after the fire, plaintiff J. W. Caraway testified:

"The agent asked me for this Rushing inventory, and I told him I didn't have it. I told him it was destroyed or lost or something— that I didn't have it. I told him it was in the safe the last time I saw it, but I didn't know whether it was destroyed by fire or in some other way, but it was lost, and I didn't have it. I went over this matter with that agent some two or three hours; he went through all my books, and I reckon he saw everything he wanted to; he went through the books and figured on it, and he says: 'I can't make a settlement with you; you have not got the other inventory.'"

He further testified: "I had a safe in my house at the time it was burned, and I had some other papers in the safe, and my ledger and other books in it at the time the house burned. I couldn't say how long before the fire was the last time I saw the Rushing inventory. I had been looking at the inventory; that is, I had used the inventory for reference to prices on goods a time or two, but I could not say exactly what time—don't know, but sometime between April and the time of the fire."

The stock of goods upon which the policies were issued consisted of the stock purchased from Rushing, also a stock purchased by appellees known as the Pauls store stock, and which was moved to and placed in appellees' store in the latter part of March or the first of April, 1907. Appellees kept a set of books which purported to present a

complete record of the business transacted by them, showing purchases, sales and shipments, both for cash and on credit. The books show that appellees' purchases, not including the Rushing and Pauls stocks, amounted to $16,546.44. The Rushing stock was entered in the merchandise account on these books at $6,600; the Pauls stock at $3,100. These figures appear to be the respective amounts of the inventories of said stocks taken on the 1st of January, 1907. No account of the sales from said stocks between the 1st day of January, 1907, and the dates of their respective purchases by appellees was kept, and the exact amount and values of these stocks at the time they came into the possession of appellees is not shown by the books or otherwise. In all other respects the books kept by the appellees and produced after the fire comply with the requirements of the policies. The additional insurance taken out by the appellees was procured with the knowledge and consent of appellants or its authorized agent.

Upon these facts the appellant requested the trial court to instruct the jury to return a verdict in its favor, and the refusal of the court to give such instruction is complained of under an appropriate assignment of error.

We think the facts before stated, which are shown by the undisputed evidence, clearly establish a breach by appellees of the covenants of the policies in regard to the keeping, and production after the fire, of the inventories mentioned in said policies. The approval by appellant of the assignment of the policy by Rushing to appellees constituted a new contract between appellant and appellees, and they could not be charged with any breaches by Rushing of the original contract of insurance, and were only required to thereafter live up to the terms of the contract. Bayless v. Mercantile Ins. Co., 80 S. W., 289.

The inventory of the stock taken by Rushing on January 1, 1907, having been taken within twelve months prior to the date of the transfer to appellees, they were not required to take an inventory within thirty days after the transfer, but by the plain and unambiguous terms of their contract with appellant they were required to keep the inventory taken on January 1, 1907, in a fireproof safe at all times when the store was not actually open for business, and to produce the same for examination by appellant after the fire.

If, without fault or negligence on the part of appellees or their employes, this inventory had been lost or destroyed, the failure to produce it after the fire would not defeat their right of recovery on the policies, but the burden was upon appellees to show that they were in no way responsible for the loss of the inventory.

From the testimony of the appellee J. W. Caraway, before set out, no other reasonable conclusion can be drawn than that the loss of the inventory was due to the failure of appellees to keep it in the safe as required by the terms of the policy. There is nothing to indicate the loss of the inventory in any other way, and its loss in this way can not excuse the failure to produce it. Western Assurance Co. v. Kemendo, 94 Texas, 367.

Having agreed with appellant to so keep and produce this inventory, and that in event they failed to produce it for appellant's examination after the fire they would not be entitled to recover anything

upon the policies, appellees could only be relieved from the forfeiture of the policies by showing a substantial compliance with the terms of their agreement, and we think the evidence fails to raise the issue of such compliance on their part.

The Act of 1903, Sayles' Statutes, article 3096aa, declares that: "Any provision in any contract of insurance issued or contracted for in this State, which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect and shall not constitute any defense to any suit brought on such contract, unless it be shown on a trial thereof that the matter or thing misrepresented was material to the risk, or actually contributed to the contingency on which said policy became due and payable; and whether it was material, and so contributed in anywise, shall be a question of fact to be determined by the court or jury trying such case."

The learned trial judge construed this Act as applicable to appellees' covenant to keep and produce the inventory, and instructed the jury that, unless they found from all the evidence that the loss of the inventory was material in ascertaining the amount of loss sustained by appellees, that the failure to produce the inventory would not defeat appellees' right to recover. That this is not a proper construction of the Act mentioned is no longer an open question. By the language of the Act its application is restricted to representations of past or present facts, and it can not be applied to agreements to perform or not perform future acts, or to what are termed promissory warranties. This was the construction given this Act in the case of Scottish U. & N. Ins. Co. v. Weeks, 55 Texas Civ. App., 263 (118 S. W., 1068), and Cross v. Colonial Assurance Co., 56 Texas Civ. App., 627 (121 S. W., 517), and in the former case a writ of error was denied by the Supreme Court.

Appellees having failed to keep and produce the inventory as required by their contract, and failed to show that the loss of the inventory was not due to fault or negligence on their part, the trial judge should have instructed the jury to return a verdict in favor of appellant.

It is true there is ample evidence to sustain a finding that the value of the goods destroyed exceeded the amount of the insurance, and there is nothing to indicate fraud of any kind on the part of appellees. In these circumstances it may seem a harsh rule that would deny appellees the right to recover for their loss, but it is better that appellees should suffer hardship than that the courts should disregard and trample upon the sacred right of contract. Appellant contracted to pay his loss only in event appellees would furnish it as evidence of such loss the inventories mentioned in the policies, and its legal right to stand upon this agreement can not be questioned. The importance of the missing inventory as evidence of the amount of the loss is apparent. Having contracted to pay only upon the production of this evidence, appellant should not be required to pay without it. Western Assurance Co. v. Kemendo, 94 Texas, 367; Continental Insurance Co. v. Cummings, 98 Texas, 115.

This conclusion renders a consideration of the remaining assignments of error unnecessary.

The evidence upon this issue being undisputed and the case fully developed, it follows from the conclusion above expressed that the judgment of the court below should be reversed and judgment here rendered in favor of appellant, and it has been so ordered.

*Reversed and rendered.*