LIVERPOOL & LONDON & GLOBE INS. CO. v. LESTER et al. (No. 450.)

(Court of Civil Appeals of Texas. El Paso. April 29, 1915. Rehearing Denied May 20, 1915.)

**1. INSURANCE ⊚⟳255 — INDEMNITY — RISKS — STATUTE.**

Under Rev. St. § 4947, providing that any policy provision that answers in the application, if false, shall avoid the policy, shall constitute no defense to any suit thereon, unless it is shown at the trial that the misrepresentation was material to the risk, a statement in a policy indemnifying insured against direct loss by fire of the dividends of certain stock, that it was understood that for three years prior thereto the company had earned a dividend of 25 to 30 per cent. per annum, was not promissory in its nature, and, in view of findings that the defendant's agents knew that the company had not earned such dividends and that even if they had known would have issued the policy, was not material to the risk and no defense.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 548; Dec. Dig. ⊚⟳255.]

**2. INSURANCE ⊚⟳377 — AVOIDANCE — FALSE REPRESENTATIONS—WAIVER.**

Where the agents of defendant company knew when they issued a policy indemnifying insured against loss of dividends that the corporation in which insured held stock had not earned dividends of from 25 to 30 per cent. for each of the three preceding years, the issuance of the policy stating that it was understood that for three years prior thereto the corporation had earned such dividends, estopped the company to question the validity of the policy on the ground that the dividends paid were in fact less than as stated.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 942, 966, 967, 975-997; Dec. Dig. ⊚⟳377.]

**3. INSURANCE ⊚⟳668—ACTION ON POLICY—QUESTION FOR JURY.**

In an action on an indemnity policy, where plaintiff testified to a telephone conversation with the defendant's agent which was denied by defendant, the question of the identity of the party with whom plaintiff had the conversation was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732-1770; Dec. Dig. ⊚⟳ 668.]

**4. INSURANCE ⊚⟳655—ACTION ON POLICY—EVIDENCE—FRAUD.**

In an action on an indemnity policy, evidence as to conversations years prior to the date of the policy sued on forming the basis of the subsequent renewals of the policy, were admissible on the defense of fraud based upon misrepresentation and concealment as to the earnings of the company, against loss on whose dividends the policy indemnified.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1677-1681, 1682-1685; Dec. Dig. ⊚⟳655.]

**5. TRIAL ⊚⟳256—REQUESTED INSTRUCTIONS.**

Where a party desires a more complete instruction, he should prepare and request an instruction to that effect.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628-641; Dec. Dig. ⊚⟳256.]

**6. APPEAL AND ERROR ⊚⟳1170 — HARMLESS ERROR—INSTRUCTIONS.**

In an action on an indemnity policy, the failure of an instruction defining misrepresentation to mention acts as well as statements, was one of omission and not a misdirection, and, where the question of misrepresentation based on plaintiff's act was submitted to the jury, was not prejudicial within Rule 62a (149 S. W. x), providing that judgment shall not be reversed for error at the trial not calculated to cause the rendition of an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540-4545; Dec. Dig. ⊚⟳1170.]

**7. INSURANCE ⊚⟳256—AVOIDANCE—MISREPRESENTATIONS.**

Where an insurer would have issued an indemnity policy knowing the truth as to the matters claimed to have been misrepresented and was not influenced by the representations made, their falsity would not avoid the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. ⊚⟳256.]

**8. APPEAL AND ERROR ⊚⟳1068 — HARMLESS ERROR—INSTRUCTIONS.**

In an action on an indemnity policy, any error in the court's definition of concealment was harmless, where the jury expressly found that defendant's agent knew of the facts alleged to have been concealed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225-4228, 4230; Dec. Dig. ⊚⟳1068.]

**9. INSURANCE ⊚⟳666—INDEMNITY—AMOUNT OF RECOVERY.**

Under a policy indemnifying the insured in the amount of $10,750 in the difference between a usual corporation dividend of 25 per cent. per annum and the amount less than that sum actually earned or paid, occasioned solely by fire, where it appeared that the property of the company destroyed by fire was valued at $80,000, on which there was $68,000 insurance, that its capital stock was $100,000, that plaintiff owned stock of the par value of $43,000, that the net proceeds during the year when the property was wholly destroyed were $10,480, which reduced by expenses left a balance of $7,139, a judgment deducting 43 per cent. of such balance and awarding judgment for the difference between such deduction and the face of the policy, $7,-680.18, was proper.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1791; Dec. Dig. ⊚⟳666.]

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by J. E. Lester and another against the Liverpool & London & Globe Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

---

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Thompson, Knight, Baker & Harris and W. C. Thompson, all of Dallas, for plaintiff in error. Andrews, Streetman, Burns & Logue, of Houston, for defendants in error.

HIGGINS, J. Plaintiff in error issued to J. E. Lester and Gohlman, Lester & Co., defendants in error, the owners of certain shares of the capital stock of the Standard Compress Company, of the par value of $43,000, an insurance policy, insuring them in the sum of $10,750, against all direct loss or damage by fire on the profits derived from the dividends on said stock. The capital stock of said company was $100,000. The policy contained the following provisions:

"It is understood that for three years prior hereto that the said Standard Compress Company of Houston, Texas, has earned a dividend of 25 per cent. to 30 per cent. per annum.

"It is understood that this insurance shall cover only such loss of profits as may be sustained by the assured in consequence of damage by fire to buildings, warehouses, sheds, and yards of the Standard Compress and the contents thereof during the continuance of this policy, which shall affect the dividends paid by said Standard Compress to their stockholders.

"In case of the total or partial loss by fire to the buildings and contents by which the ability of the Standard Compress Company to pay their usual dividend of 25 per cent. per annum may be impaired, it is assumed as a basis for settlement of any claim for loss of profits which may arise under this policy, that the Standard Compress Company shall use all due diligence to repair or rebuild said compress buildings, warehouses, sheds, and yards, and shall resume operations as speedily as possible in the compress buildings or elsewhere, or by such other practicable and reasonable means as may be devised, to maintain their usual dividends.

"The amount for which this company shall be liable is the difference between the usual dividend of 25 per cent. per annum and the amount less than the sum actually earned or paid, said reduction in earning power being occasioned solely by fire."

During the term of the policy, all of the buildings, warehouses, sheds, yards and contents thereof, belonging to the company, of the value of $80,000, were destroyed by fire and were not replaced.

This suit was brought by appellees to recover the face of the policy, and upon trial before a jury was submitted upon special issues. Upon the answers thereto, judgment was rendered in favor of defendants in error for $7,680.18.

Among the issues submitted to the jury and their answers thereto, are the following:

"No. 2. Did Childress & Taylor, as agents for defendant, know at the time it issued the policy sued on that Standard Compress Company had not earned for each of the three years next preceding the issuance of the policy sued on a dividend of from 25 per cent. to 30 per cent.? Answer: Yes.

"No. 3. Did the agents of the defendant believe from the acts of plaintiffs detailed in evidence, and the conversations with plaintiff, if any, detailed in evidence, that the Standard Compress Company had annually, for three years next preceding the issuance of the policy sued upon, earned a dividend upon its stock of from 25 per cent. to 30 per cent.? Answer: No.

"No. 5. Would the agents of defendant issuing the policy sued upon have issued the same as it was issued, and containing the terms same contained, if they had known or been advised that Standard Compress Company had not earned a dividend of 25 per cent. to 30 per cent. upon its stock per annum for the three years next preceding the issuance of said policy? Answer: Yes.

"No. 6. Did Childress & Taylor, as agents for defendant, or did defendant, at the time the policy sued on was issued, know that Standard Compress Company was not paying to its stockholders a usual dividend of 25 per cent. per annum? Answer: Yes.

"No. 7. Did the agents of defendant, at the time of the issuance of the policy sued upon, believe from the acts of plaintiff, detailed in evidence, and the conversations with plaintiff, if any, detailed in evidence, that Standard Compress Company had paid a usual dividend to the stockholders upon its stock of 25 per cent. per annum? Answer: No.

"No. 9. Would the agents of defendant, issuing the policy sued upon, have issued the same as it was issued, and containing the terms same contained, if they had known or been advised at the time that Standard Compress Company did not pay to its stockholders a usual dividend of 25 per cent. upon the stock held by them? Answer: Yes.

"No. 10. At the time the first policy was issued by defendant to plaintiffs, shown in evidence, did said agents of defendant believe that Standard Compress Company had earned for the three years next preceding the issuance of said policy an annual dividend of from 25 per cent. to 30 per cent.? Answer: No.

"No. 11. Did plaintiffs, Gohlman, Lester & Company, or either of them, misrepresent, in writing or otherwise, any material fact or circumstance with reference to the amount of the earnings of said Standard Compress Company? Answer: No.

"No. 12. Did the plaintiffs, Gohlman, Lester & Company or either of them, conceal from defendant, or its agents, any material fact or circumstance concerning the earnings of said Standard Compress Company? Answer: No.

"No. 13. Would an ordinarily prudent person, having before him the policy offered in evidence, issued by the Home Insurance Company on June 7, 1907, with the statement contained therein: 'And paid, namely, 24%, 19% and 25%,' in the condition in which you believe same was when submitted to the agents of defendant, have been put upon inquiry as to the amount of dividends actually paid by Standard Compress Company to its stockholders during the three years next preceding the date of the issuance of the first policy of the defendant? Answer: Yes.

"No. 14. If you answer the next preceding issue in the affirmative, then, and only in that event, you will answer the following question: "Would such inquiry, if made and prosecuted with ordinary diligence, have discovered to defendant, or its agents, the amount of dividends actually paid by the Standard Compress Company to its stockholders for the three years next preceding the issuance of the first policy issued by defendant to plaintiffs? Answer: Yes.

"No. 15. Would an ordinarily prudent person, situated as W. H. Seaman was at the time plaintiffs applied to him for the policy sued on, have made any further inquiry as to the facts of the earnings of the Standard Compress Company for the three preceding years? Answer: Yes."

[1] It appears that for three years prior to the issuance of the policy, the Standard Compress Company had not earned dividends of 25 to 30 per cent. per annum, and it insisted that this fact avoids the policy in view of the statement therein contained that:

"It is understood that for three years prior hereto that the said Standard Compress Com-

pany of Houston, Texas, has earned a dividend of 25 per cent. to 30 per cent. per annum."

Article 4947 of the Revised Statutes provides:

"Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

The statement indicated related to the past; it was in no wise promissory in its nature, and in view of the jury's findings, it cannot be contended that its falsity was material to the risk. Under the statute, it follows that judgment was properly rendered upon the same. Ins. Co. v. Strickler, 136 S. W. 599; Ins. Co. v. Wade, 127 S. W. 1186; Ins. Co. v. Caraway, 130 S. W. 478; Ins. Co. v. Ray, 138 S. W. 1122; Gross v. Ins. Co., 121 S. W. 517; Ins. Co. v. Rogers, 128 S. W. 625.

[2] There is another complete answer to the contention that the policy is avoided by the falsity of the stipulation as to dividends. In response to the second and sixth special issues, it appears that the agents who issued the policy knew at the time that the Standard Compress had not earned dividends of from 25 per cent. to 30 per cent. for each of the three years preceding its issuance, and knew that it was not paying a usual dividend to its stockholders of 25 per cent. per annum, and it has a number of times been held in this state that to deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as grounds of avoidance is to attempt a fraud. The issuance of the policy and acceptance of the premium under such circumstances is tantamount to an assertion that the policy is valid at the time of delivery, and constitutes a waiver of the known ground of invalidity. Under such circumstances, the issuance of the policy and acceptance of the premium with knowledge that dividends had not been paid as was stated in the policy estops the appellant to question the validity of the policy upon the ground that the premiums paid were in fact less than as stated. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; Ins. Co. v. Ende, 65 Tex. 118; Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705; Ins. Co. v. Smith, 135 S. W. 688.

[3] The second assignment relates to the admission of the testimony of one of the plaintiffs, of a telephone conversation which he had with some one in the office of Childress & Taylor, the agents of defendant, who issued the policy of insurance. It is object-

ed that the party with whom he had the conversation was not identified. The witness stated that it had been several years since the conversation took place, and he could not definitely state with whom the conversation was had, but it was the party who undertook to write the insurance. Each of the members of the firm denied that they had the conversation, but this was an issue for the jury to pass upon. The objection relates to the weight of the evidence rather than its competency. It was properly overruled. Northern Assurance Company v. Morrison, 162 S. W. 411; Bank v. Bank, 92 S. W. 439; Ins. Co. v. Wallace, 160 S. W. 1130; Ry. Co. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861; Wolfe v. Ry. Co., 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331.

The third assignment is directed to the same matter as the second, the proposition thereunder being disposed of by what has just been said.

[4] The second proposition is to this effect: "Where plaintiff has been in possession of the policy sued on for more than five months prior to the loss complained of, it is error to refuse to exclude on motion testimony of such plaintiff as to happenings years prior to the date of the policy sued on which vary, contradict, and alter, or tend so to do, the terms of such policy."

The testimony does not vary, contradict, or alter the terms of the policy, but was admissible upon the issue of fraud raised by defendant, based upon alleged misrepresentation and concealment as to the Compress Company's earnings during previous years. These conversations took place several years before, when the first policy was issued and the negotiation between the parties at that time was the basis of the policy then issued and the subsequent renewals thereof.

The fourth assignment complains of the refusal of a peremptory instruction upon the theory that there was a concealment or misrepresentation of facts relative to the earnings and dividends of the company. The findings of the jury are adverse to this contention, and the testimony of Lester, plaintiff, supports their finding, for which reason the instruction was properly refused.

Upon the issues of misrepresentation and concealment, the court charged:

"The policy sued upon in this case provides as follows: 'This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof.'

"You are instructed that by misrepresentation of a material fact or circumstance, as used in said policy, is meant a statement, written or verbal, or both, concerning such fact or circumstance, which is not true in fact, and by a 'material fact or circumstance' is meant a fact or circumstance of such nature as that the agents of defendant would not have issued the policy of insurance if they had known the truth in regard to such fact or circumstance.

"By 'concealment of any material fact or circumstance' is meant the intentional withholding from defendant or its agents of the knowledge of such fact or circumstance, with the knowl-

edge or belief upon the part of the parties so withholding such knowledge, that the other party would not issue the policy if he had known the facts so concealed."

Error is assigned to the definition of misrepresentation upon the ground that misrepresentation may be based upon or arise out of acts done as well as statements made, and that the charge should not have confined the question of misrepresentation to statements, written or verbal; and, further, that a material misrepresentation would avoid the policy regardless of the influence of the misrepresentation upon the issuance of the policy.

[5, 6] As to the first criticism, it may be replied that the definition of misrepresentation is correct, so far as it went, and if a more complete one was desired, a special instruction to that effect should have been prepared and requested, and in any event, the omission could in no wise have prejudiced the defendant, for in special issues three and seven the question of misrepresentation based upon plaintiff's acts was submitted to the jury, and it is quite clear that no injury resulted by failing to mention acts as well as statements in the definition complained of. The error, if any, was one of omission and was not a misdirection, and plaintiff in error seems to have had the full benefit of a submission of the issue of misrepresentation based upon alleged acts, and no prejudicial error is shown. Rule 62a (149 S. W. x).

[7] The second criticism does not rest upon any sound legal principle. If defendants would have issued the policy knowing the truth concerning the matters claimed to have been misrepresented and were not influenced by the representations made, then the falsity thereof would not avoid the contract.

[8] It is immaterial whether the court gave a correct definition of concealment. Any possible error therein is harmless, since the jury expressly found that the defendant's agents had knowledge of the facts alleged to have been concealed.

[9] The policy ran for one year, from August 7, 1911, to August 7, 1912. The fire occurred February 21, 1912. The net proceeds up to March 13, 1912, from the operation of the Compress for the year of the policy, were $10,480.77. The Compress did no further business during that year, and earned no other money; but there were certain current expenses in the way of current salaries of officers which were paid out of said net proceeds. The court deducted these expenses from the net proceeds from operation, leaving a balance of such net proceeds of about $7,139, which it treated as profits of the Compress Company during that year, and decided that 43 per cent. of that, being the percentage of stock owned by the plaintiffs, should be deducted from the face of

the policy, leaving the sum of $7,680.18, for which final judgment was rendered.

The property of the company destroyed by the fire was of the value of $80,000, upon which there was $68,000 insurance.

Plaintiff in error insists that the judgment is excessive; that the measure of recovery should be the average dividend paid on the stock for the three years next preceding the date of the policy (which was 12 per cent.) less the sum earned on the stock during the term of the policy. The policy does not fix this measure of recovery, but stipulates. that:

"The amount for which this company shall be liable is the difference between the usual dividend of 25 per cent. per annum and the amount less than that sum actually earned or paid, said reduction in earning power being occasioned solely by fire."

The measure of damage insisted upon would be correct if the policy had fixed the amount of recovery at the difference between the average dividend for the three preceding years and the amount less than that sum actually earned or paid, but it is not so stipulated.

The defendant in error, by cross-assignment, complains of the court's refusal to enter judgment for $10,750, the face of the policy. They contend that as the property destroyed was valued at $80,000, upon which there was only $68,000 insurance, there was therefore a net loss to the company during the year, over and above the said sum of $10,480.77 earned during the year up to the date of fire. The amount which the court deducted had been actually earned, and under the provisions of the policy was properly taken into consideration in determining the amount of the recovery, to which defendants in error were entitled, and their pro rata of this net earning was properly deducted from the face of the policy.

Affirmed.