NATIONAL FIRE INS. CO. OF HARTFORD, CONN., v. CARTER et al.
(No. 7445.)

(Court of Civil Appeals of Texas. Galveston. Dec. 5, 1917.)*

1. INSURANCE ⨺668(5)—MATERIAL PROVISIONS IN POLICY—QUESTIONS OF FACT.

Under Rev. St. 1911, art. 4947, providing that false statements in contracts of insurance will not constitute a defense unless material, and a provision in a fire policy that it would be void if the insured was not the sole unconditional owner, it was a question of fact whether such provision in the policy was material where the insured was only a mortgagee.

2. APPEAL AND ERROR ⨺1010(1)—REVIEW—FINDINGS—WEIGHT OF EVIDENCE.

Where there is sufficient evidence in the record to support a finding of fact by the court, the appellate court cannot disturb it.

---

⨺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied Jan. 10, 1918.

**3. INSURANCE �findkey378(1)—ESTOPPEL—KNOWL-
EDGE OF AGENT.**

Where an insurance agent at the time of issuing or renewing a policy knew and had in mind the fact that the insured was not the owner, but only a mortgagee, of the insured property, the company is estopped to deny that it waived a provision in the policy that the policy would be void if insured was not the unconditional owner.

Error from District Court, Trinity County; S. W. Dean, Judge.

Suit by W. T. Carter and another against the National Fire Insurance Company of Hartford, Conn. Judgment for plaintiffs, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error. Nelms & Platt, of Groveton, and Dean, Humphrey & Powell, of Huntsville, for defendants in error.

GRAVES, J. This suit was brought by defendants in error to recover from National Fire Insurance Company of Hartford, Conn., plaintiff in error here, $5,500 under a fire insurance policy for that amount issued by it in their favor, as owners, on a two-story, metal roof brick building at Trinity, Tex., destroyed by fire on January 1, 1915.

The insurance company defended on the ground that the interest of Carter & Bro. was not the sole and unconditional ownership of the property, and that they were not the owners in fee simple of the ground on which the building stood, as required by provisions in the policy to that effect. The latter replied by a general denial, a plea setting up all the facts about the status of the title to the property at the time of the issuance and delivery of the policy, which were at variance with the stipulations in the policy requiring that their ownership of both building and ground be exclusive, and alleging that such facts were wholly immaterial to the risk, were then fully known to the insurance company, and that it had waived any right to do so, and was estopped to urge these conditions in the policy in defense of their suit thereon.

The case was tried before the court without a jury, resulting in a judgment for Carter & Bro. for the amount sued for, with interest and costs, from which the insurance company has appealed through this writ of error. The policy was issued to run one year from March 22, 1914, and the fire, as stated, occurred January 1, 1915. The provisions of the policy relating to ownership were these:

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The material facts as to actual ownership were in substance the following:

Prior to December 2, 1911, the legal title to the property in question was in S. A. E. Clegg, who held it in trust for her son, G. C. Clegg, to whom she had given it. Under that date S. A. E. Clegg executed and delivered to W. T. Carter, one of the defendants in error, a general warranty deed thereto reciting the payment of $100 in cash and other good and valuable considerations, the testimony showing, however, that G. C. Clegg then both owed Carter & Bro. an old debt, and also had arranged to borrow from them money with which to erect a building on the property, and that this deed from his mother to W. T. Carter, though in form a general warranty, was in reality a mortgage executed at his request and given to secure the firm of W. T. Carter & Bro. in the payment of the old indebtedness, and in the repayment of such money as they might advance for the construction of the building.

Thereafter, and until January 1, 1914, the apparent record title to the property remained continuously in W. T. Carter, but under that date he executed and delivered to G. C. Clegg a general warranty deed to it, retaining a vendor's lien to secure payment of a number of notes representing the entire consideration, which was the aggregate of the old indebtedness at the time of the deed to Carter in 1911 and the moneys advanced by his firm for the construction of the building. Thereafter, that is, from January 1, 1914, until the fire on January 1, 1915, the legal title to the property remained in G. C. Clegg, so that there was no change, even in the form of the title, between the date of the issuance of the policy and the destruction of the building by fire.

There was neither suggestion of misrepresentation in the procuring of the insurance nor of negligence or improper conduct on the part of either the assured, or of G. C. Clegg, in reference to the fire; and it was shown that Carter & Bro., despite the form of the previously mentioned conveyances, never claimed any title to the property, except as security for debt.

Upon the case thus grounded, the insurance company's sole contention, very ably and earnestly presented through several assignments, is that the policy was void according to its terms, because the undisputed evidence showed that the interest of the assured in the property was not the sole and unconditional ownership thereof, nor did they own in fee simple the ground upon which the insured building stood.

Objection is made to our consideration of the first assignment upon the ground that it is too general, which we think well taken, and sustain; but the same questions are properly raised in succeeding assignments, to which no objection is or could be effectually offered, and the ruling is therefore without practical result.

[1] The answer of defendants in error to this position is twofold: First, that article 4947 of the Revised Civil Statutes of Texas

of 1911 is applicable to the case, and that under its provisions the trial court was under the duty of determining from the evidence whether or not the status of the title to the property insured was material to the risk, or actually contributed to the contingency or event on which the policy became due and payable; second, that under the undisputed evidence the insurance company waived these provisions in the policy as to the sole, unconditional, and fee-simple ownership of the building and ground. Under the established facts either answer would have been conclusive, but we think both were available.

The statute referred to is as follows:

"Any provision in any contract or policy of insurance issued or contracted for in this state, which provides that the answers or statements made in the application for such contract, or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk, or actually contributed to the contingency or event on which said policy became due and payable; and whether it was material and so contributed in any case, shall be a question of fact to be determined by the court or jury trying such case."

With much force the insurance company insists that this statute has no application to the case here made, but applies only to a "provision in any contract or policy· of insurance * * * that the answers or statements made in the application or in the contract, if untrue or false, shall render the contract or policy void or voidable"; that, while there were provisions of this latter character in the policy here involved to which the statute would apply, it in no wise related to the first above-quoted stipulations therein making liability contingent upon the kind of ownership there specified. Among others, the following Texas cases are cited in support of this contention: Scottish Union & National Ins. Co. v. Weeks Drug Co., 55 Tex. Civ. App. 263, 118 S. W. 1086; Gross v. Colonial Assur. Co. (1909) 56 Tex. Civ. App. 627, 121 S. W. 517; Hartford Ins. Co. v. Wright (1910) 58 Tex. Civ. App. 237, 125 S. W. 363; Home Ins. Co. v. Rogers (1910) 60 Tex. Civ. App. 456, 128 S. W. 625; National Fire Ins. Co. v. I. W. Caraway & Co. (1910) 60 Tex. Civ. App. 566, 130 S. W. 458.

But this identical construction of the statute, upon a review of these same authorities, and upon what we deem to be essentially the same state of case, was passed upon by the Court of Civil Appeals at Austin, through Chief Justice Key, in Mecca Fire Insurance Co. v. Stricker, 136 S. W. 599; and we feel that we can do no better than quote with approval, as our own interpretation of the statute, what is there said, as follows:

"Counsel for appellant contend that the statute is not applicable, and in support of that contention cite Insurance Company v. Weeks [55 Tex. Civ. App. 263] 118 S. W. 1087, in which case the Supreme Court refused to grant a writ of error; also Gross v. Colonial Insurance Co. |56 Tex. Civ. App. 627] 121 S. W. 517; Insurance Co. v. Wright [58 Tex. Civ. App. 237] 125 S. W. 365; Home Insurance Co. v. Rogers [60 Tex. Civ. App. 456] 128 S. W. 628; National Insurance Co. v. Caraway [60 Tex. Civ. App. 566] 130 S. W. 458. In nearly all the cases cited, and especially the one which was passed on by the Supreme Court, the provision of the contract under consideration was the 'iron-safe' clause, which is neither a representation nor a statement concerning past or present matters, but is a promissory warranty. In such clauses the assured does not represent or state that he has kept or is keeping a set of books, etc., but he enters into an executory contract by which he obligates himself to do so in the future. Obviously such a stipulation is not within the purview of the statute. None of the other cases cited are entirely analogous to this case, and, if they were, we would not feel compelled to follow them, as they were not rendered by a tribunal of any higher authority than this court. But it is contended on behalf of appellant that it was not the intention of the Legislature that the statute referred to should apply to and cover covenants of warranty, but that it should apply only to such answers or statements made by the assured in his application or in the contract as were not by the terms of the contract made warranties. That contention is not believed to be sound. The statute in question is remedial legislation, and shows upon its face that it was enacted for the purpose of remedying what the Legislature must have deemed an evil. It is a matter of common knowledge that for many years prior to the enactment of the statute insurance companies, as a general rule, embodied in the policies which they issued stipulations making many things warranties which, when the policy was sought to be enforced, appeared to be immaterial. Such stipulations were always embodied in the printed forms of contract furnished and used by the insurance companies. It was that supposed evil that the Legislation under consideration was intended to remedy. The rule is universal that in construing a remedial statute courts will consider the evil intended to be remedied, and give to the language of the statute a liberal construction in order to accomplish the legislative purpose.

"Other reasons exist for a liberal construction of this statute, and these are: (1) A legislative declaration contained in section 3 of the final title of the Revised Statutes of 1895, to the effect that legislation in this state should be construed liberally in order to accomplish the legislative purpose; and (2) the law does not favor forfeitures, and the legislation under consideration was enacted for the purpose of preventing forfeitures on account of immaterial matters. Keeping in view these rules of construction, we are of the opinion that the stipulation in the policy under consideration, in reference to liens, is equivalent to a representation or statement on the part of the assured that no liens then existed on any of the property covered by the policy, and therefore that stipulation comes within the terms of the statute."

As stated, the two cases were in principle the same. There was no application for the insurance in either. In the Stricker Case the policy provided it would be void if at the time it was issued there were any liens on the property insured, while in the case at bar the provision was that the policy would be void if the assured was not the sole, unconditional, and fee-simple owner of the property.

We can see no difference in so far as the applicability of the statute is concerned. Just as was done in the Stricker Case, the trial court here found and held, upon what we think was amply supporting evidence, that under the terms of article 4947 the status of the title to the property insured was not material to the risk; and in that holding we think there was no error. To the same general effect are the conclusions in Insurance Co. v. Wade, 59 Tex. Civ. App. 631, 127 S. W. 1186; Insurance Company v. Lester, 176 S. W. 602; Insurance Assn. v. Ray, 138 S. W. 1122.

Plaintiff in error yet maintains, however, that it is material as a matter of law for a fire insurance company to know whether its assured owns solely and unconditionally the insured building and in fee simple the ground on which it rests, or merely holds a mortgage against them, and in illustration discusses a number of authorities, such as Insurance Co. v. Lawrence, 2 Pet. 25, 49, 7 L. Ed. 335, Watson v. Insurance Co., 159 N. C. 638, 75 S. E. 1105, Dry Dock v. Houghton, 92 Md. 68, 48 Atl. 85, 84 Am. St. Rep. 485, Oakes v. Insurance Co., 131 Mass. 164, Bates v. Insurance Co., 2 Cinn. Sup. Ct. 195, 13 Ohio Dec. 851, Insurance Co. v. Camp, 64 Tex. 521, and Insurance Co. v. Gordon, 68 Tex. 144, 149, 3 S. W. 718, treating of the general principle of materiality as to knowledge of ownership; but the two Texas cases cited were decided long before the statute in question was passed.

[2] In general and prima facie we do not doubt that to be the correct rule; but not so, we think, in the face of a special statute authorizing the court or jury in the particular case to inquire into the question of its materiality, and where upon the special facts existing it was found not to be material, as was the situation here. Under our statute, as above quoted, the determination of the issue of materiality of the true status of the title to the risk was one of fact for the trial court, and there being sufficient evidence in the record to support its finding, we are not at liberty to disturb it.

[3] Upon the further question of the sufficiency of the evidence upon the plea of waiver of the stipulated conditions in the policy relating to ownership, even if it were in position here to raise the issue, which it is not, because its assignments are all too general to even suggest it, we yet think that the record likewise concludes plaintiff in error, and that it was estopped to urge the breach of either condition in defense of the suit.

We think the record discloses, not only that the insurance company had at all relevant times full knowledge of the material and essential facts showing the real and true ownership of the property it insured, but that such knowledge had been, if not originally so obtained, certainly at a later date, acquired by its agent while acting in the course of his agency, and was present in his mind at the time he issued the policy sued upon: indeed, the agent, Mr. Bell, himself, by direct and uncontroverted statement admitted as much in the following excerpts from his testimony:

"At the time I wrote this last policy I knew that Mr. Clegg was in actual control of the building. There never had been any change in it, that I knew of. I knew that he was claiming the building, and I understood that he was the owner of it; I thought he was the owner, but I didn't know how he was the owner. I just understood that he was the real owner, when I wrote this policy in suit. My judgment was at the time that he would have a clear title to the property by paying Carter what he owed him."

"That supposition was not based on conversation alone; it was based on my knowledge of Clegg and general business affairs."

"When I would renew that policy I had in mind the original proposition. I did not know a thing in the world of any change. All the time, until that building burned, I knew that Clegg was in actual possession of the building and claimed to own it."

Such is our finding of fact, and we do not understand that, under it, plaintiff in error would question the conclusion that estoppel against it would follow. Its claim is that the knowledge of the agent, Mr. Bell, was not acquired by him while in the performance of his duties to it, and was therefore not attributable to it. While our last-stated fact finding is a complete answer to this contention, we further think that, under our authorities, the crux of the question here involved, and particularly as here applied, is not so much the source of the agent's knowledge, nor even when he obtained it, but whether or not, at the very time he issued the policy in suit, he actually had the real facts in his mind. Taking his own statement for it, there can be no doubt that he did, and, that being so, his principal was bound by it. Insurance Co. v. Ende, 65 Tex. 123; Insurance Co. v. Cummings, 98 Tex. 115, 81 S. W. 705; Wagner et al. v. Insurance Co., 92 Tex. 549, 50 S. W. 569; Fire Association of Philadelphia v. Compress Co., 50 Tex. Civ. App. 172, 109 S. W. 1134; Shawnee Fire Ins. Co. v. Chapman, 63 Tex. Civ. App. 61, 132 S. W. 854.

From the conclusions stated, it follows that all assignments should be overruled and the trial court's judgment in all things affirmed; and it is so ordered.

Affirmed.